GEORGE R. NEWELL, R. B. LANGDON and C. S. LANGDON, Partners as GEO. R. NEWELL & Co., Plaintiffs and Appellants, *v.* EVER WAGNESS, Sheriff of Ramsey County, Defendant and Respondent.

**1. Conveyance by Insolvent; Secret Trust.**

L., a merchant, was embarrassed financially, and was being pressed by his creditors with demands which he was unable to pay. The plaintiffs, among others, were creditors of L., and were urging him to satisfy their claim. Under these circumstances L. executed and delivered to plaintiffs a bill of sale, absolute on its face, and which purported to sell and convey to plaintiffs all the merchandise then in L.'s store, and all other property in and about the store, including book-accounts and bills receivable. L., at the same time, leased the store-room to plaintiffs, and plaintiffs caused the bill of sale and lease to be filed for record with the register of deeds. At the time the bill of sale and lease were made, and as a part of the same transaction, plaintiffs agreed with L., by an agreement not reduced to writing, that plaintiffs should convert the property described in the bill of sale into money, and out of the money so obtained plaintiffs were to pay their own claim against L., and that of one other creditor. In pursuance of these agreements the plaintiffs took the property described in the bill of sale into their possession. Two days after the plaintiffs took possession of the property it was attached by certain other creditors of L. *Held*, that the parol agreement reserved a trust in the property in favor of L., and not being

apparent in the bill of sale, was secret, and consequently the transaction was against public policy, and fraudulent in law, and therefore void as to attaching creditors.

(Opinion Filed April 1, 1890.)

*A*PPEAL from district court, Ramsey county; Hon. Charles F. Templeton, Judge.

Messrs. Miller, Cleland & Cleland, for the appellants, contended that the transfer of the goods mentioned hereafter in the opinion was in the nature of a pledge; that plaintiffs never claimed to be absolute owners thereof, never sold or disposed of any of them prior to the levy of the attachment by the defendant. The recording of a bill of sale, there being no statute requiring it or authorizing it, is of no effect and is not an assertion of title. Booth v. Kehoe, 71 N. Y. 341.

If, though absolute in form, the transfer to the plaintiffs was intended as security only, and was so treated by them it was valid. Smith v. Beattie, 15 N. Y. 542; Despard v. Wallbridge, 15 id. 374.

J. F. McGee and D. E. Morgan, for respondent, argued: That plaintiffs having obtained title by a bill of sale, absolute in its terms, must stand on that bill and cannot now claim as pledgees. Blakeslee v. Rossman, 43 Wis. 116; Stein v. Munch, 24 Minn. 390; Robinson v. Elliott, 22 Wall. 513; Janvrin v. Fogg, 49 N. H. 340.

WALLIN, J. This is an action of claim and delivery, whereby plaintiffs seek to recover a stock of merchandise, including safe, store fixtures, book-accounts, and bills receivable, seized by defendant as sheriff, under writs of attachment issued in actions instituted by the creditors of one T. T. Lee. The case was tried without a jury, and the district court filed its findings of fact and conclusions of law, and directed that judgment be entered for a return of the property to the defendant, or, in case a return could not be had, for the value thereof to the amount of the attachment liens. Among the facts found by the trial court are the following: That at the time in question defendant was sheriff of Ramsey county, and as such sheriff, on December 8,

1888, seized the property in question while it was in plaintiffs' possession, upon writs of attachment issued in actions instituted against one T. T. Lee by the creditors of Lee; that on December 6, 1888, said Lee was the owner of and in the actual possession of said property, the same being situated in the lower story of a store building then owned by Lee at Devil's Lake, Ramsey county, Dak.; that on said 6th day of December, besides debts due the attachment creditors, Lee was indebted to the plaintiffs in the sum of $2,959.07, which amount was unsecured, and indebted to the Merchants' National Bank of Devil's Lake in the sum of $2,486.04, which last mentioned indebtedness was secured by mortgage upon the store building of said Lee, the upper rooms of which building were the home of Lee and his family; that on said December 6th, and long prior thereto, said Lee was insolvent, and was being pressed for payment by various creditors; that the plaintiffs well knew that Lee was insolvent, and was being pressed for payment by his creditors, and had such knowledge at the time they took possession of the property under a bill of sale and lease from Lee as hereinafter stated; that on the 6th day of December one W. S. Stockdale, an agent of plaintiffs, was at Devil's Lake, and then and there, in plaintiffs' behalf, took the entire property in plaintiffs' possession, the same being delivered to plaintiffs by Lee; that as a part of the same transaction, whereby the plaintiffs obtained possession of the property, Lee executed a lease of the store in which the goods were situated to plaintiffs, and also, for an expressed consideration of $5,800, made, executed and delivered a bill of sale of all of said merchandise and property, absolute in form, to the plaintiffs; that the plaintiffs continued in possession of said property in said store until the seizure was made under the writs of attachment upon the 8th day of December, as before stated.

The trial court also finds the following facts: "That at the time of the execution and delivery of the above bill of sale, and as a part of the same contract, it was orally and privately agreed between the plaintiffs and the said Lee that said bill of sale, and the property described therein, was to be received by said Newell & Co. merely as security for the amount due from said

Lee to the plaintiffs, which amounted at that time to about $2,900; and also as a part of the same agreement and contract, but also resting in parol, the said Newell & Co. agreed with said Lee to convert said property into cash, and after paying their own claim against said Lee to pay a mortgage on the homestead of said Lee, amounting to $2,486.04, which was then held by the Merchants' National Bank of Devil's Lake, and after making such payments return the surplus to said Lee; that the plaintiffs at once, after the making of the above contract, and under and pursuant to the terms thereof, took possession of all of the property above described, and retained such possession until dispossessed by the defendant under the attachment above mentioned; that the plaintiffs caused said bill of sale to be filed for record in the office of the register of deeds of Ramsey county, Dak., on the 7th day of December, 1888, at 8 o'clock A. M.; that said bill of sale has ever since said date remained on file in said office; that said bill of sale was reported by the R. G. Dun & Co. Commercial Agency on the day or the day after said bill of sale was so filed for record; that the attachment creditors, Tarbox, Schliek & Co., learned of the existence of said bill of sale from the report of said R. G. Dun & Co., about the date of said bill of sale, and also learned of the existence of said bill of sale from letters written from Devil's Lake to said Dun & Co.; that the attachment creditors, Wyman, Mullin & Co., learned of the existence of said bill of sale on the date the same was filed for record, from a telegram from their attorney at Devil's Lake; that there was no evidence offered on the trial to show that the attaching creditors mentioned in the defendant's answer knew of the existence of the oral agreement which accompanied said bill of sale; that said Lee, at the time said bill of sale was executed, and as a part of the same transaction, by a written lease, leased his store building in Devil's Lake, Dak., in which the property described in the bill of sale was located, to the plaintiffs for the period of three months, with the privilege of one year, for $30 per month; that said lease was filed in the office of the register of deeds of Ramsey county, Dak., at the same time the bill of sale was filed; the property described in the above bill of sale was all the property, real or personal, owned by said Lee on the

date of said bill of sale, which was not exempt from execution, except one quarter section of land, worth about $500, which land is subject to two mortgages, amounting in the aggregate to $665; that at the time when said Lee entered into the above-mentioned contract with the plaintiffs he had fully determined to stop business and surrender said property therein described to the plaintiffs for the purpose stated in the oral agreement which accompanied said bill of sale; that the store building used by said Lee as a store on the 6th day of December, 1888, was at said time the homestead of said Lee, and was exempt from execution; that said Newell & Co., on the 6th day of December, 1888, and for some time prior thereto, knew that said building was the homestead of said Lee; that said homestead on said last-mentioned date was of the value of $3,000, and was ample security for the mortgage of $2,486.04 held by the Merchants' National Bank of Devil's Lake against the same, and was so considered by said bank, and said bank on said 6th day of December, 1888, so informed the plaintiffs and said Lee; that the provision made by said Lee and the plaintiffs in the oral agreement above mentioned, by which the mortgage to said bank was to be paid out of the proceeds of the sale of the property described in said bill of sale, was made at the suggestion of W. S. Stockdale, the agent of the plaintiffs, and who represented the plaintiffs in making the contract of December 6, 1888, with Lee. There was no evidence offered to show that the bank was insisting upon payment of its mortgage, and the cashier of said bank notified said Stockdale and Lee, before and after said bill of sale was made, that the bank considered the real estate covered by its mortgage ample security for its debt, and would not become a party to the transaction or contract of December 6, 1888, and would take no step that would in any way disturb its mortgage lien, but the bank did not object to being paid as provided by said Stockdale and Lee; that the value of the stock of merchandise and fixtures mentioned in the bill of sale on December 6, 1888, was $2,700; that the value of the book-accounts and bills receivable mentioned in the bill of sale on December 6, 1888, was $6,700, and the cash value of the same on that day was $6,000; that $500 of said bills receivable was held by the First National

Bank of Devil's Lake as collateral security to a loan of $290, which loan was also secured on the quarter section of land hereinbefore mentioned; that $1,400 of said bills receivable, was held by the Merchants' National Bank of Devil's Lake as collateral security to the mortgage debt hereinbefore mentioned against the homestead of said Lee; that the face value of the book accounts and bills receivable, above mentioned, on December 6, 1888, was $12,330.61; that the transaction of December 6, 1888, between Lee and the plaintiffs was made with the intent to hinder and delay the creditors of said Lee; that the amount of the defendant's attachment liens is $2,536.19, for which amount judgment was entered in said case on December 7, 1888; that the whole transaction between Lee and the plaintiffs was evidenced by the written bill of sale, lease, and oral agreement hereinbefore stated, and there were no other writings ever made in connection with said transaction; that the plaintiffs, to prove the terms of the contract of December 6, 1888, between themselves and Lee, introduced the bill of sale and lease above mentioned, and proved the oral agreement above mentioned."

The evidence is before us, and we have carefully examined the same, and find that the findings of fact are amply sustained by the testimony. The plaintiffs put in evidence all the circumstances of the transaction whereby Lee turned over to plaintiffs all of his merchandise, store fixtures, book-accounts, and bills receivable then in his store, and also the fact that an absolute bill of sale was made to them by Lee as a part of the transaction, and that plaintiffs filed the same for record; also that plaintiffs by written lease, leased the store of Lee; and finally the plaintiffs' witness, one Stockdale, who represented the plaintiffs in the transaction in question, testifies to the making of the contemporaneous parol agreement whereby Lee directed the plaintiffs to convert the property into cash, and with the proceeds pay certain debts of Lee's, and turn over the surplus to Lee. On his direct examination Stockdale testifies as follows: "I was to take possession of the stock of goods, and take possession of all the stuff, and dispose of the property to the best advantage that I could, and pay off our claim, and the claim of the bank here, and turn over the balance to Mr. Lee.

I was acting in this matter for the plaintiffs." On cross-examination Stockdale testifies: "The agreement between Lee and I was not in writing. It was an oral agreement, outside of the bill of sale." And further testified: "Of course I did not know what disposition we would make of the goods, and if they had to be sold at retail it would take some time. Question. What was the arrangement at that time as to how the goods were to be sold—in a lump? Answer. The goods were to be sold out and converted into cash. There was no particular understanding, because we did not know what was the best way to do for a certainty." The district court found, as a conclusion of law, that "the contract of December 6, 1888, between Lee and the plaintiffs, was fraudulent in law, and void as to the creditors of Lee." We hold that this conclusion was sound, and could not have been otherwise, upon the findings and upon the conceded facts of the case. Such a transfer of property as that disclosed by the evidence and findings is of a character which, on grounds of public policy, the law denounces as constructively fraudulent and void as to creditors. The question of the existence or non-existence of an actual purpose to defraud creditors does not enter, as an essential factor, in disposing of the question presented in the record, and we shall therefore, in this opinion, not find it necessary to enter upon that aspect of the case. The transfer of the property in question presents a case of "constructive fraud"—sometimes called "legal fraud." See Civil Code, § 884; Comp. Laws, § 3508. The case of Coburn v. Pickering, 3 N. H. 415, is a leading case. The court say: "A sale of goods, in order to be considered as made *bona fide* with respect to creditors, must be made without any trust whatever, either express or implied. This is the doctrine of Twyne's Case, 3 Coke, 80*b*, and we are not aware that the soundness of it has ever been questioned. It is not permitted to a debtor to convey away his goods by sale with any secret understanding between him and the vendee that the goods, shall be holden for the benefit of the vendor in any way whatever. The nature of the benefit reserved in the sale is immaterial.    *    *    *    All conveyances, with secret reservations for the benefit of the vendor, tend directly to

hinder and delay creditors. They hold out false colors and false appearances, and mislead and deceive creditors. They give to the property of the vendor the appearance of belonging wholly to another, when in truth he has an interest in it concealed under the trust. It is for this reason that a trust of this kind is in law a fraud. As the obvious tendency of these reservations and trusts is to deceive and defraud creditors, it has not been deemed necessary to stop to inquire into the particular views or motives of individuals in each case; but all· courts, relying on the presumption that every man intends the probable consequences of his acts, have at once pronounced all these trusts to be fraudulent, not only within the meaning of the 13 Eliz. c. 5, but at common law." See Parker v. Pattee, 4 N. H. 176; Smith v. Lowell, 6 N. H. 68; Winkley v. Hill, 9 N. H. 31; Tifft v. Walker, 10 N. H. 100; Smith v. Conkwright, 28 Minn. 23; 8 N. W. Rep. 876; Switz v. Bruce, 20 N. W. Rep. 639. In McCulloch v. Hutchinson, 7 Watts, 434, the court say: "A bill of sale by a debtor to one preferred creditor, purporting on its face to be an absolute conveyance of the goods of the debtor at a fixed price, but in reality accompanied with a secret trust that the creditor shall hold and dispose of the goods for the discharge of a debt much less in amount, and pay over the balance to the debtor, is manifestly a contrivance by which other creditors may be hindered and prevented in the recovery of their debts. It is the secrecy of this trust—a trust incompatible with that which appears on the face of the transaction—that constitutes its illegality." See, also, King v. Cantrel, 4 Ired. 251; North v. Belden, 13 Conn. 376; Bryant v. Young, 21 Ala. 264; Sims v. Gaines, 64 Ala. 392; Chenery v. Palmer, 6 Cal. 119. The doctrine has become elementary, and applies as well to transfers of real estate as to transfer of goods and chattels. See Bump, Fraud. Conv. 216, and cases cited. The supreme court of the United States in Lukins v. Aird, 6 Wall. 78, state the law as. follows: "It is not important to inquire whether, as a matter of fact, the defendant had a purpose to defraud the creditors of Aird; for the fraud in this case is an inference of law, on which the court is as much bound to pronounce the conveyances in question void as to creditors as if the fraudulent intent were directly

proved." The case of Bank v. Comfort, decided by the supreme court of Dakota territory, reported in 28 N. W. Rep. 855, is in point. It is quite true that this case, as claimed by plaintiffs' counsel, is not precisely like the case at bar in its facts. The two cases, are, however, quite similar in their general features, and in certain aspects are identical. In both cases the creditors were seeking to collect a claim from a merchant in embarrassed circumstances; and to make such collection, among other things done, a bill of sale was executed and delivered to the creditors, purporting to convey to the creditors an absolute title of all the goods, etc., in the store. In both cases, there was a secret agreement, resting in parol, which differed radically from the terms of the bill of sale, and whereby the creditors held the goods only in trust, to be converted into money, which money was to be turned over to the debtor after deducting therefrom the amount of the creditors' claim. It is with reference to this conflict between the unwritten and the written terms of the transaction that the court say: "Any secret reservation in trust for the grantor, not apparent on the face of the papers, but resting wholly in parol, renders the entire transaction void, as against creditors injured thereby."

Plaintiffs' counsel argue that the rights of the plaintiffs to the property in question as between plaintiffs and the attaching creditors, must be ascertained and determined, not by the terms of the bill of sale, but entirely by the terms of the secret agreement resting in parol. Counsel insists that, under the parol agreement, plaintiffs, with respect to the property in suit, occupied either the position of mortgagees of chattels in possession or that of pledgees. Answering this argument, it will suffice to say that we do not find a *scintilla* of testimony in this record tending to show that the plaintiffs and Lee ever agreed to place the plaintiffs in the position of either mortgagees or pledgees of the goods. On the contrary, the evidence tends to show that, as between Lee and the plaintiffs, the latter held the goods neither as pledgees nor as mortgagees, but as trustees. The law will not allow plaintiffs to shift their legal position to escape the consequences of their own voluntary acts. The bill of sale, in connection with the secret trust arrangement, consti-

tutes a fraud in law, and the consequences of such fraud cannot be avoided by an attempt to ignore the terms of the bill of sale. In Wisconsin, where a mortgagee took possession of mortgaged property under a mortgage which was constructively fradulent, by reason of a secret trust in favor of the mortgagor, the mortgagee, after taking possession under his mortgage, claimed that it did not matter that the mortgage was fraudulent in its inception, since he had the actual possession, and that he could hold the goods either as a payment or as a pledge to secure his claim. The reasoning of the case applies as well to a fraudulent bill of sale as to a fradulent mortgage. We quote from the opinion: "As a matter of fact and of law, the mortgagees took possession under the mortgage, as was their right as between them and the mortgagor. We do not hold that the holder of a chattel mortgage may not relinquish his right under it, and accept the mortgaged goods from the mortgagor in payment of his debt or as a pledge. Such a transaction might be upheld in a proper case. But we do hold that such a shifting of title must be open, express, and explicit—as open, express and explicit as the mortgage itself; and that one who takes possession of chattels, apparently under a mortgage, cannot, when the mortgage fails him, shift his right of possession, by vague evidence of implied understanding, to payment of his debt or to a pledge for it. Both debtor and creditor must expressly be parties to either payment or pledge. But either must be established by the acts of the parties at the time, as expressly and satisfactorily as payment or pledge in any other case. Here there is no such evidence." Blakeslee v. Rossman, 43 Wis. 116. See, also, Stein v. Munch, 24 Minn. 390. We have carefully examined the plaintiffs' assignments of error relating to the admission of testimony, and find that the ruling of the trial court was proper, in view of the issue of actual fraud made by the pleadings; but whether such rulings were proper or otherwise could not have affected the determination of the case in this court, as we have deemed it proper to dispose of the case wholly upon the ground of constructive fraud. The order of the dis-

trict court denying the plaintiffs' motion for a new trial was correct, and the same is affirmed.    All concur.