(79 N. W. Rep. 874.)

---

RED RIVER VALLEY NATIONAL BANK *vs.* O. G. BARNES, *et al.*

Opinion filed June 6, 1899.

### Promissory Note—Consideration for Collateral Paper.

On February 28, 1895, R. was indebted to plaintiff in the sum of $9,000, and on that day gave his promissory note for that amount to plaintiff, payable September 28, 1895. On the same day, as collateral to said indebtedness, R. gave the plaintiff his promissory note for $2,000, falling due on September 1, 1895, and secured said $2,000 note by a chattel mortgage. The collateral paper had no independent consideration. *Held*, that the original indebtedness furnished a consideration for the collateral paper.

### Extension of Time for Payment Sufficient Consideration.

*Held*, further, that extending the time of payment upon the original indebtedness was also a sufficient consideration for the collateral paper. Such transaction is considered as one transaction, and is construed as such.

### Mortgage of Stock of Merchandise Without Change of Possession.

Where a chattel mortgage upon a stock of merchandise provided in terms that the mortgagor should remain in possession, and sell the mortgaged property at retail for cash only, and also required the mortgagor to keep accurate accounts of such sales, and turn over all the proceeds thereof to the creditor, to be applied by him upon the mortgage debt, *held*, that such mortgage is not fraudulent in law.

### Oral Agreement for Salary to Mortgagor in Possession is Not per se Fraudulent.

Where, in such case, after the execution of the mortgage, the parties thereto entered into an oral agreement whereby the mortgagor, as a part of the expense incident to selling the goods at retail, is to retain a stipulated salary, not excessive in amount, as compensation for selling the goods at retail, *held*, that such oral agreement is to be construed with, and as a part of, the mortgage.

### Mortgage Embodying Secret Trust.

So construing the same, *held*, further, that such mortgage is not fraudulent in law, as embodying a secret trust for the benefit of the debtor. In such cases the crucial question is whether the arrangement entered into is honestly made to secure the payment of an actual indebtedness, secured by the mortgage, or whether, on the contrary, it is a mere shift or device to shield the debtor's property from attack by other creditors, while it enables the debtor to proceed with his business for his own advantage.

### Mortgage Sustained.

Under the facts in this case, *held*, that the arrangement was not fraudulent in fact.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the Red River Valley National Bank against O. G. Barnes as sheriff of Cass county, N. D., and the North Star Boot & Shoe Company. Judgment for plaintiff. Defendants appeal. Affirmed.

*Newman, Spalding & Stambaugh,* for appellant.

The collateral note was without consideration and void. *Turle* v. *Sargent,* 65 N. W. Rep. 349; *Wipperman* v. *Hardy,* 46 N. E. Rep. 537; *Vehon* v. *Vehon,* 70 Ill. App. 40; *Taylor* v. *Slater,* 12 Atl. Rep. 727. The principal note of $9,000 was given upon the consideration of an extension of a pre-existing debt. *Lundburg* v. *N. W. Elev. Co.,* 43 N. W. Rep. 685. The mortgage was purposely given for an amount largely in excess of the debt from Robinson to respondent, and is void in law. *Butts* v. *Peacock,* 23 Wis. 359. If the transaction between respondent and Robinson was fraudulent, respondent should be held to a strict accounting for the property. *Collingsworth* v. *Bell,* 43 Pac. Rep. 252; *Mannen* v. *Bailey,* 32 Pac. Rep. 1085. The mortgage permitting the mortgagor to retain possession of property and sell and dispose of the same in the ordinary course of trade for cash, the mortgagor to account for the proceeds of sales, and the same to be applied to the payment of the debt secured does not render the mortgage void before maturity. *Lane* v. *Starr,* 1 S. D. 107, 45 N. W. Rep. 212. But the parole agreement permitting Robinson to continue the business, replenish the stock, and from the proceeds of sales pay for the same, and pay running expenses, retaining one hundred dollars per month for the support of his family, then to pay any balance upon the mortgage debt, rendered the mortgage void. So held where similar agreements are written in the mortgage. *Robison* v. *Elliott,* 22 Wall. 520; *Chophard* v. *Bayard,* 4 Minn. 418; *Griswold* v. *Sheldon,* 4 N. Y. 581 *Edgall* v. *Hart,* 9 N. Y. 213; *Barrett* v. *Fergus,* 99 Am. Dec. 547; *Stewart* v. *Duster,* 23 Wis. 136; *Collins* v. *Meyers,* 16 Ohio 447; *Freeman* v. *Rawson,* 5 Ohio St. 1; *Wilson* v. *Voigt,* 13 Pac. Rep. 726; *Leopold* v. *Silverman,* 16 N. W. Rep. 580; *Bannon* v. *Bawler,* 26 N. W. Rep. 236; *Sanford* v. *Jensen,* 69 N. W. Rep. 108; *Greely* v. *Winsor,* 1 S. D. 117; *First Nat. Bank* v. *Comfort,* 4 Dak. 167, 28 N. W. Rep. 855; *Robbins* v. *Parker,* 3 Metc. 117; *Shurtleff* v. *Willard,* 19 Pick. 202; *Anderson* v. *Patterson,* 25 N. W. Rep. 541; *Fisher* v. *Kelly,* 46 Pac. Rep. 146; *Little* v. *Burnham,* 49 Pac. Rep. 604; *Pierce* v. *Wagner,* 66 N. W. Rep. 977; *Birmingham Dry Goods Co.* v. *Kelso,* 18 So. Rep. 135; *Bank* v. *Goodbear,* 19 So. Rep. 204; *Mandeville* v. *Avery,* 124 N. Y. 376; *Pabst Brewing Co.* v. *Butchart,* 69 N. W. Rep. 809; *Wile* v. *Butler,* 34 Pac. Rep. 1110; *Black Hills Mer. Co.* v. *Gardner,* 58 N. W. Rep. 557; *Smith* v. *Ham,* 51 Mo. App. 433; *Rathbun* v. *Perry,* 31 Pac.

Rep. 679; *Deering & Co.* v. *Worthy,* 29 N. E. Rep. 55; *Huschle* v. *Morris,* 23 N. E. Rep. 643. Cases holding such a transaction valid proceed on the principle that title passes under the mortgage, and the mortgagee as owner can employ the mortgagor as his agent to conduct the business. *Blakeley* v. *Hummerel,* 64 N. W. Rep. 821; *Etherridge* v. *Sperry,* 139 U. S. 266; *Ephraim* v. *Kellaher,* 13 L. R. A. 604. The existence of the parole modification of the written agreement contained in the mortgage is equally fatal as if written in the mortgage. *Barnet v. Fergus,* 99 Am. Dec. 547; *Griswold* v. *Sheldon,* 4 N. Y. 581; *Adgell* v. *Hart,* 9 N. Y. 213; *Wood* v. *Lowry,* 17 Wend. 492; *Wilson* v. *Voigt,* 13 Pac. Rep. 726. The mortgages being fraudulent both in law and fact, the court will not be a party to it and assist in perpetrating a fraud, but will construe the transaction in favor of creditors and against the mortgagee. *Anderson* v. *Brenneman,* 6 N. W. Rep. 222. Plaintiff must account for the property taken at its value and no expenses of sale or foreclosure can be allowed. *Mandeville* v. *Avery,* 124 N. Y. 381; *Merry* v. *Wilcox,* 36 N. Y. Supp. 1050; *Miller* v. *McElvain,* 34 Pac. Rep. 396; *Blue Valley Bank* v. *Clement,* 26 N. W. Rep. 583; *Stormbey* v. *Lindberg,* 25 Minn. 515; Cobbey, Chat. Mtgs., 985, 1030.

*Mills, Greene & Resser,* for respondent.

The collateral note and mortgage represented a part of the transaction, adjusting Robinson's indebtedness to the plaintiff. The whole transaction must be construed together. § 3900, Rev. Codes. The chattel mortgage of merchandise is admitted to have been valid on its face. The subsequent parole agreement did not invalidate it. *Whitson* v. *Griffs,* 17 Pac. Rep. 801; *Ephraim* v. *Kelleher,* 18 L. R. A. 604, n.; *Frankhouser* v. *Ellett,* 22 Kan. 127; 31 Am. Rep. 171; *Etheridge* v. *Sperry,* 139 U. S. 171. There was no fraud in fact. The law then permitted preferences among creditors. § 4654 Comp. Laws; *Cutler* v. *Pollock,* 4 N. D. 205, 59 N. W. Rep. 1062.

WALLIN, J. This action was tried to the Court, and resulted in a judgment in favor of the plaintiff. The action was brought to recover damages for an alleged unlawful seizure and sale of personal property upon which the plaintiff had a chattel mortgage. The defendant O. G. Barnes seeks to justify as sheriff, and it is conceded that he made the seizure and sale of the property in his official capacity as sheriff of Cass county. The sheriff levied under an execution issued upon a judgment in favor of his co-defendant, the North Star Boot & Shoe Company, which judgment was entered in May, 1895. Said levy was made on or about September 18, 1895, and thereafter the goods were sold, and the proceeds of the sale were applied upon said execution. The controlling facts may be stated as follows:

On the 28th day of February, 1895, one E. M. Robinson was engaged in mercantile business, and then had a stock of merchan-

dise at Fargo, N. D. Said Robinson was also the owner of a large farm in Cass county, which he then was, and long had been, operating. On said 28th day of February Robinson was indebted to the plaintiff in the sum of $9,000, and no more, which indebtedness had then been for some time accumulating. On said date Robinson executed and delivered to the plaintiff his promissory note for $9,000, fallng due on September 28, 1895. On said date Robinson also executed and delivered to plaintiff his certain other promissory note, for the sum of $2,000, falling due September 1, 1895. To secure said $2,000 note said Robinson and his wife executed and delivered to plaintiff their chattel mortgage upon all crops to be grown and raised on his said farm in the year 1895. Said mortgage also embraced certain personal property on said farm, consisting of farm machinery, implements, and domestic animals, which said farm machinery, implements, and domestic animals were the property seized and sold by the sheriff, and the same was the only property so seized or taken under said execution. In addition to the usual stipulation found in chattel mortgages, said mortgage contained the following agreement: "It is further agreed that, in case said mortgagee shall deem that the said crops are not properly sown, planted, cultivated, harvested, and threshed, or cared for, the said mortgagee has the right to enter on said land, and do all that is necessary to properly put in, harvest, thresh, and market said crops, and reimburse himself for all labor and expense out of the proceeds thereof; the portion remaining to be applied on the debt hereby secured." It is conceded that said $2,000 note and the mortgage was given and received as collateral, to secure said indebtedness evidenced by the $9,000 note, and that the collateral paper had no independent consideration.

It further appears that on April 15, 1895, said Robinson was indebted to plaintiff in the sum of $378.13 for advances made to him by the plaintiff subsequent to February 28, 1895, and said Robinson gave plaintiff his promissory note for said additional advances for $378.13, dated April 15, 1895, and falling due 90 days after its date. Said last-mentioned note, together with the said note for $9,000, evidenced an actual indebtedness then due from Robinson to the plaintiff in the sum of $9,378.13, exclusive of interest. To secure said total indebtedness, said Robinson executed and delivered to plaintiff another chattel mortgage, bearing date April 15, 1895. Said last-mentioned mortgage covered said stock of merchandise at Fargo, consisting of boots, shoes, trunks, etc., and also the fixtures and safe in said store. In addition to the usual conditions contained in chattel mortgages, said last-mentioned mortgage embraced the following stipulation: "It is further agreed that, so long as the terms and conditions of this mortgage are kept and performed, the undersigned may retain possession of said property, and sell and dispose of the same in the ordinary course of trade, for cash; but of all such sales the undersigned shall keep a detailed and accurate account, and at the end of each day shall render

to the said Red River Valley National Bank an accurate account of such sales, and shall, at the time of so rendering such accounts, pay over to said Red River Valley National Bank, its successors and assigns, the entire proceeds of all such sales, to be credited and applied, as fast as paid, to the payment of the debt hereby secured, until the same shall have been fully ,paid and satisfied." Both chattel mortgages were filed for record on April 16, 1895. On said last-mentioned date Robinson and the plaintiff entered into an oral agreement, substantially as follows: It was agreed (as a means of supporting said Robinson and his family, and as a means of defraying the expenses incident to carrying on said mercantile business) that said Robinson should retain out of the proceeds of sales made of the goods in said store the sum of $100 per month, and also retain sufficient of said proceeds of sales to defray the incidental expenses of operating said store business. It was further agreed that new goods were to be purchased out of such proceeds from time to time, in quantities to be determined by the plaintiff. Such new goods were, however, to be bought only in small quantities, for cash, and then only as a means of keeping an assortment, and to keep the stock in such condition as to make it profitable to handle, and with a view to the disposition of the entire stock of merchandise in the store. · ·

It appears, further, that on said April 15, 1895, and to further secure said total indebtedness of $9,378.13, said Robinson and his wife executed and delivered to the plaintiff their certain mortgage upon said farm in Cass county, which mortgage was a second mortgage, and was junior to another mortgage of Robinson for $6,250. This junior mortgage was subsequently foreclosed, and the property bid in by plaintiff. On the same day (April 15th) Robinson and his wife executed and delivered their warranty deed of conveyance, whereby they conveyed their said farm to one John W. Von Nieda, who was then president of the plaintiff. Said warranty deed was, however, made as security for said total indebtedness due from Robinson to plaintiff, and it was agreed that said Von Nieda should dispose of said farm to the best advantage, and apply the proceeds thereof upon the indebtedness due the plaintiff from Robinson. It appears that accurate accounts were kept of the transactions occurring after April 15, 1895, between Robinson and the plaintiff. One of these accounts is known in this record as the "Farm Account," and the other as the "Store Account." The items embraced in these accounts are all in evidence. The evidence discloses that Robinson, in the spring of 1895, was financially unable to procure the seed grain necessary to seed his farm, or to defray the other expenses incident to carrying on the farm for that year. In this emergency the plaintiff, to protect its said security, intervened, and advanced considerable amounts, which were expended in buying seed grain, and paying wages and other expenses necessarily incurred in, cropping and harvesting the crop of 1895, which sums are given in detail in said farm account.

Among the items in the farm account was one of $1,036.70, which is charged to Robinson, and represents a sum paid at his request by the plaintiff to liquidate the accumulated interest on the first mortgage upon the farm. The testimony shows that it was necessary to pay such interest, as well as certain taxes, in order to protect the securities which the plaintiff held at the time the interest was paid. The account also shows certain other items, which were paid by plaintiff at Robinson's request, to liquidate miscellaneous claims connected with the farm; and some of such claims, like the item of interest above mentioned, were not paid out in connection with raising or harvesting the crop of 1895, but all were paid at Robinson's request.

The evidence shows that, pursuant to the written and oral agreements made, as before stated, between Robinson and the plaintiff, the former continued to conduct said store business from April 16, 1895, until January 25, 1896, at which time the residue of the stock in the store was bid in by the plaintiff at the foreclosure sale made upon the mortgage given upon the store property. While the business was being conducted by Robinson, viz: from April 16th to January 25th, the sales were all made for cash, at retail, and an accurate account of all sales was kept by Robinson, and the same were promptly reported to the plaintiff, and all purchases were made from the proceeds of such sales, and were made only to replenish the stock, and for the purposes already stated. The entire proceeds of the sales made by Robinson, while he conducted the business under the written and oral stipulations above mentioned, after deducting therefrom the expenses incident to carrying on such business for a period of nine months, including his own salary of $100 a month, were credited by plaintiff on its said claim of $9,378.13. The net proceeds of the foreclosure of the chattel mortgage upon the goods were likewise credited upon such indebtedness, and the net proceeds of the foreclosure of the chattel mortgage upon the farm personalty not seized under the execution were also credited. The real estate mortgage was foreclosed, also, and bid in for a certain sum, which was placed to Robinson's credit upon the same indebtedness. It appears, also, that after the defendant Barnes had levied on said farm property, as already stated, and before he made the execution sale thereunder, the judgment creditor, the North Star Boot & Shoe Company, caused a notice to be served on the plaintiff, requiring, in effect, that the plaintiff should first exhaust all of its other securities before resorting to the property seized by the sheriff. The trial court finds, in effect, and the evidence fully justifies such finding, that, at the time the property in question was seized by the sheriff, there was due upon the indebtedness secured by said chattel mortgage upon the farm personalty a sum greatly in excess of the value of the property seized by the sheriff; and the Court also finds, upon sufficient evidence, the following facts: "That after the taking of said personal property by said defendants, and before the trial of this action, all other

securities held by the plaintiff for the debt of said E. M. Robinson to it, as heretofore set forth, had been fully exhausted by said plaintiff, and that at the time of the trial and final determination of this action in this court there remained owing by said E. M. Robinson to this plaintiff, upon said note and chattel mortgage hereinbefore described, an amount greatly in excess of the value of said personal property so taken by said defendants." The "note and chattel mortgage" referred to in the finding above quoted is the $2,000 note, secured by the chattel mortgage upon the farm personalty.

Upon this state of facts certain questions of law are presented for determination. As their first contention, it is urged by counsel for the defendants that said $2,000 note, and the chattel mortgage given to secure said note, are voidable, and should be held for naught, for the reason, as counsel claim, that the same are without consideration, and fraudulent as to creditors. If this proposition were sound, it would be decisive of the case; but we have no difficulty in reaching the conclusion that the note is based on a valid consideration, and that the mortgage was not fraudulent as to creditors. It is conceded that the note of $2,000, and mortgage to secure the same, were given and received as collateral paper to an indebtedness of $9,000 due from Robinson to the plaintiff. This debt was due, and had accumulated prior to February 28, 1895, upon which date the collateral paper was executed and delivered; and upon the same day, and as a part of one transaction, the principal debt was extended by a new note for $9,000, given by Robinson, and which, by its terms, matured on September 28, 1895. This extension, alone, was, in our judgment, a sufficient consideration. All the paper being executed at the same time, and with reference to the same indebtedness, brings the case within the familiar rule stated in section 3900, Rev. Codes, which provides that "several contracts relating to the same matter between the same parties, and made as parts of substantially one transaction, are to be construed together." In support of the contention that the collateral is without consideration, counsel cite *Turle* v. *Sargent* (Minn.) '65 N. W. Rep. 349; *Wipperman* v. *Hardy* (Ind. App.) 46 N. E. Rep. 537; *Vehon* v. *Vehon*, 10 Ill. App. 40; and *Taylor* v. *Slater* (R. I.) 12 Atl. Rep. 727. None of these citations are in point. True, they all announce the familiar rule that a note given without consideration is voidable; but this begs the question. The pertinent inquiry here is whether the collateral paper in question, in view of the conditions existing when it was given, and the purpose for which it was given, is without consideration. Upon the question of consideration we might safely rest this case upon the very cases cited by counsel, as all of them recognize an extension of time to the debtor as valid consideration for collateral paper, even when such paper is given by a stranger, resting under no legal or moral obligation to pay the principal debt. In the case of *Bank* v. *Lamont*, 5 N. D. 393, 67 N. W. Rep. 145, this Court found, as an inference from the

circumstances surrounding that case, that an extension of time was granted to the debtor, and upheld the collateral notes for that reason. The case at bar is much stronger on its facts, because in this case the $9,000 note itself furnishes irrefragable proof that an extension to the debtor was actually given from February 28th until September 28th. But we may go further, and say, upon authority, that the principal debt of $9,000 furnishes ample consideration for these collateral obligations. In *Spencer* v. *Ballou,* 18 N. Y. 327, the Court uses the following language: "A creditor may take as many notes from time to time as his debtor will give him for the same debt, and enforce either at his election. It makes no difference, as to the consideration, whether a note for a prior debt is given expressly as a collateral security, or is in terms or legal effect another principal security. The same consideration which will support a principal will support a collateral undertaking."

Counsel further contends that the $2,000 mortgage is fraudulent, and hence void as to creditors. In support of this proposition counsel say in their brief that the mortgage, "being purposely given for an amount largely in excess of the debt from Robinson to respondent, is void in law." From our point of view, this statement of counsel as a statement of fact is singularly inaccurate, and is squarely opposed to the actual facts of the case, as already stated. Instead of being given for an amount largely in excess of the debt due plaintiff from Robinson, it was given for an amount which was less than one fourth of the actual debt then owing the plaintiff, and for which the plaintiff had a right to demand security of the debtor. Under such circumstances, the mortgage, when taken, cannot be characterized as a fraudulent cover of the debtor's property, upon grounds stated by counsel. Nor do we see any reason for holding the mortgage fraudulent as to creditors. It was a manifestation of laudable diligence on plaintiff's part to ask for and obtain security from Robinson, and in the regular course of its business as a bank the plaintiff obtained the mortgage we are here considering. There is not a scintilla of evidence in this record even tending to show that the security was asked for or given for any fraudulent purpose. At the time in question the statute declared that "a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." Comp. Laws, § 4654. Under this statute it must follow, in the entire absence of proof of an actual fraudulent intent, that the $2,000 mortgage which covered the property seized was a valid and subsisting lien upon the property when the sheriff seized the same, and this Court will so hold.

Nor are we able to reach any different conclusion with respect to the securities taken by plaintiff from Robinson on April 15, 1895. We have examined the record carefully, and, in the light of the conceded facts and the undisputed testimony, we have no difficulty in reaching the conclusion that the transactions of April 15, 1895, were honest business transactions between a debtor and a creditor,

and that the same were untainted by fraud as to creditors. The defendant the North Star Boot & Shoe Company was not a judgment creditor at that time, and, if it were such, the case would not have been different. As has been seen, the statute then in force gave its express sanction to any lawful transaction whereby a debtor gave preference to one creditor by securing his claim in preference to another, left without security. The two mortgages executed by Robinson on April 15, 1895, were bona fide, and were given to secure the payment of an actual indebtedness of $9,378.13. True, the last-mentioned mortgages included all the debtor's property not already covered by the mortgage of February 28th. But this fact is not an indicium of fraud, nor does it tend to taint the transaction with suspicion. The security then taken was not excessive, and the sequel shows that the same was insufficient to pay the amount of the debt secured by the same. It does not appear that any creditor was prevented by the mortgages of April 15th from seizing any of Robinson's property. So far as appears, no creditor attempted to levy upon any property embraced within the mortgages of that date, or desired to levy thereon. But, if such mortgages had, as suggested by counsel, operated as a deterrent, and had actually prevented a seizure of such property by the defendants in satisfaction of their judgment, we are unable to discover in such a result anything unlawful or fraudulent. The plaintiff's prior lien, secured by its mortgages, would be superior in right and in law, and the same would be entitled to protection as such at the hands of the courts. Our conclusion is, upon this point, that the mortgages, when executed, were not, as contended by counsel, fraudulent either in law or in fact.

Nor did the stipulation, embraced in the mortgage, providing, in effect, that Robinson should remain in possession and sell the goods at retail, rendering an account of such sales, and turning over the proceeds to the plaintiff, operate to make the mortgage upon the store goods fraudulent as to creditors. This is conceded, and there is abundant authority to sustain the proposition. See *Conkling* v. *Shelley*, 28 N. Y. 360; *Brakett* v. *Harvey*, 91 N. Y. 215. These cases are cited with approval in *Lane* v. *Starr*, 1 S. D. 107, 45 N. W. Rep. 212. In the case of *Brackett* v. *Harvey*, 91 N. Y. 215, Judge Finch uses this language: "These cases went upon the ground that such sale and application of proceeds is the normal and proper purpose of a chattel mortgage, and within the precise boundaries of its lawful operation and effect. It does no more than to substitute the mortgagor as the agent of the mortgagee, to do exactly what the latter had the right to demand, what is was his privilege and his duty to accomplish. It devotes, as it should, the mortgaged property to the payment of the mortgage debt." Referring to a similar agreement, it was said, in *Conkling* v. *Shelley*, supra: "Such an agreement made the mortgagors agents of the mortgagees. Their possession and their sales were, in effect, those of the mortgagees. It was as if the latter had taken possession,

and placed a third person in charge as agent, to sell and account to them." The mortgage upon the merchandise embraced the usual stipulations to the effect that the mortgagee might take possession at any time he deemed said debt insecure, or if the debtor attemped to remove or dispose of the goods. But, as has been seen, these stipulations were modified by the express agreement, incorporated in the mortgage, whereby the mortgagor was clothed with authority to sell the goods at retail for cash, and turn over the proceeds of such sales to apply on plaintiff's claim. This express stipulation, under the authorities we have cited, created the relation of principal and agent between the debtor and the mortgagee, for the purpose of conducting the sales of the property hypothecated as security. Nor does it, in our judgment, make any difference that the legal title of the chattels in the store was vested in Robinson. He had given the plaintiff a specific lien upon the goods, of such a character as to prevent his disposing of the same without the plaintiff's consent. This consent was given, with certain limitations, expressed in the mortgage. Under the agreements, the debtor was empowered to sell, but only as the agent of the mortgagee. But, as has been shown, the mortgage provided, in express terms, that all proceeds of sales of the goods in the store were to be turned over to the plaintiff and credited upon the debt secured by the mortgage. It appears, further, by the record, that this feature of the instrument was modified by an oral arrangement made between the plaintiff and Robinson, and under which all sales at retail were made. This arrangement, in brief, required Robinson to turn over the proceeds of sales, after deducting therefrom the expenses incident to carrying on the store business, including a salary agreed to be paid Robinson of $100 per month, and amounting to $900 for the period during which the business was so conducted.

Counsel contend that the oral agreement must be given the same effect that would be attached to it if it were written in the instrument. In this we fully agree with counsel. But the further contention is made that the mortgage, so modified, is fraudulent as to creditors, because, as counsel argue, the debtor is allowed, under the modified arrangement, to carry on the business for his own benefit, in this: that the debtor received a salary for selling out the merchandise at retail. No other item of the total expense of selling the goods seems to be criticised by counsel. But counsel seem to attach great importance to this one item of necessary expenditure, not because the salary was not earned, nor because Robinson did not conduct the business of his agency with diligence, honesty, and good judgment. No such charges are made, and none such could be sustained upon the evidence. But counsel urge that the mortgage arrangement, as modified, in its practical workings operated to the advantage of the debtor, by giving him a position at a salary sufficient to support his family, and, as counsel argue, to carry on the business substantially as he did before the mortgage was made. There is much conflict of judicial opinion as to the

effect of permitting a debtor, who has given a mortgage upon a stock of merchandise, to remain in possession and sell out the same. But we think it must be conceded that the better authorities do not hold that such an arrangement is necessarily fraudulent. Each case should be disposed of upon its own facts. We concede, however, that there is substantial agreement in the cases to the effect that such an arrangement may be assailed by creditors where it appears that the same was primarily intended as a means of hindering and delaying creditors, and at the same time of allowing the debtor to continue his business for his own advantage. In such cases the crucial test seems to be whether the arrangement is honestly entered into as a means of enabling the creditor to realize the largest amount possible out of the property mortgaged, or whether, on the contrary, the arrangement is made as a mere shift or device, entered into chiefly for the debtor's advantage, and whereby he is enabled to carry on the business without interference from other creditors and for his own advantage. We quote, in this connection, the language used by Mr. Justice Brewer in commenting upon certain decisions bearing upon this question, including *Robinson* v. *Elliott,* 22 Wall. 520. The distinguished jurist said: "In neither of those cases is it affirmed that a chattel mortgage on a stock of goods is necessarily invalidated by the fact that, either in the mortgage or by parol agreement between the parties, the mortgagor is to retain possession, with the right to sell the goods at retail. On the contrary, it is clearly recognized in them that such an instrument is valid, notwithstanding these stipulations, if it appears that the sales were to be for the benefit of the mortgagee. What was meant was that such an instrument should not be used to enable the mortgagor to continue in business as theretofore, with full control of the property and business, appropriating to himself the benefits thereof, and all the while holding the instrument as a shield against the attacks of unsecured creditors." We have quoted this language from the printed argument of counsel for the defendant, and we fully indorse the same as embodying a clear and satisfactory expression of the rule recognized by the better authorities as applicable to cases such as the case at bar. The following cases will be found to sustain the rule as formulated by Judge Brewer: *Whitson* v. *Griffis,* 39 Kan. 211, 17 Pac. Rep. 801; *Ephraim* v. *Keller* (Wash.) 18 L. R. A. 604, and notes (s. c. 29 Pac. Rep. 985; *Ethridge* v. *Sperry,* 139 U. S. 266, 11 Sup. Ct. 565, and note in 35 Lawyers' Co-op. Ed., at page 171; *Robinson* v. *Elliott,* 22 Wall. 513, and notes in 22 Lawyers' Co-op. Ed., at page 758; *Felner* v. *Wilson,* 55 Ark. 77, 17 S. W. Rep. 587; *Wilcox* v. *Landberg,* 30 Minn. 93, 14 N. W. Rep. 365. See cases collated 18 L. R. A., at page 604.

Applying this rule to the facts of this case, we find no difficulty in reaching the conclusion that the mortgage in question was not a fraudulent cover of Robinson's property. As has been seen, the debt secured by the mortgage was an actual debt, and the mort-

gage which gave the plaintiff its preference over other unsecured creditors was a valid and legal instrument. Upon the authority of the cases cited, it appears that the arrangement whereby Robinson was clothed with authority to sell the mortgaged property at retail for cash, and turn over the proceeds, was a lawful arrangement. Under the evidence it satisfactorily appears that this plan was adopted for no other purpose than that of realizing the greatest possible amount from the merchandise which was hypothecated to secure the plaintiff's debt. Counsel do not claim that the salary paid Robinson for selling the goods was excessive in amount, nor is it suggested that he did not honestly account for and turn over the proceeds of all sales, as he was bound to do under the arrangement. But counsel argue that the arrangement did redound practically to the debtor's advantage, because, under it, he drew a salary sufficient in amount to defray his family expenses. We think this fact neither material nor suggestive of fraud. The creditor exercised its judgment in selecting Robinson as its salesman, and there is nothing in this selection, as we view it, which indicates either bad faith or an improper desire to especially subserve the interests of the debtor. The mere fact that circumstances made it expedient, as plaintiff thought, to employ Robinson, instead of another, seems to us of little weight, as bearing upon the main question, viz: whether the business was allowed to be conducted for the benefit of the debtor, and not chiefly for the creditor's advantage. It is manifestly true that the business, after April 15, 1895, was not operated as it had been previously operated, viz: as the business of Robinson, and conducted for his sole benefit. Quite the reverse is the fact. After said date the proceeds of sales no longer were under control of the debtor. They were pledged in advance to apply on the secured debt, and they could not be lawfully diverted into other channels by Robinson. But it is claimed that the vice of the arrangement consists of a secret trust between the debtor and the creditor, which is repugnant to the terms of the writing, and under which a portion of the proceeds of sales were to be diverted from the plaintiff, and appropriated by the debtor. Counsel cite the case of *Newell* v. *Wagness,* 1 N. D. 62, 44 N. W. Rep. 1014, as supporting this argument. The case cited is not in point. Its facts clearly distinguish it from the case at bar. In that case the debtor made a sham sale of his stock of goods, and to deceive the public made out and filed a bill of sale, which on its face purported to transfer an absolute title to the purchaser. In furtherance of the same fraudulent purpose, the debtor leased his store building, and gave possession of the goods and store to the ostensible purchaser. All this was done to hinder and delay certain creditors, and to enable the debtor to control the proceeds of the goods pretended to be sold. There are no similar elements of deception in this case. In the case at bar the instrument put on file is a mortgage, and by its own terms it looks forward to a sale of the mortgaged property by the mortgagor himself, with a view to liquidating the debt

secured by the mortgage, and this was its actual, as well as its ostensible purpose.

Further discussion of the facts in this record would seem to be unnecessary. The evidence clearly shows, and this is admitted by counsel, that, after the $900 paid as wages to Robinson is deducted from the total proceeds of the sales made at retail, the unpaid balance of the secured indebtedness, as it existed at the time of the determination of the case in the court below, was considerably greater than the value of the property converted by the defendants. We shall hold that such wages were necessarily and properly paid the mortgagor, as an item of expense incident to the retail sale, and that such sales were lawful under the facts and circumstances of this case. The judgment of the trial court will be affirmed. All the judges concurring.