(99 N. W. 72.)

---

F. A. PATRICK & COMPANY, A CORPORATION, v. GRAND FORKS MERCANTILE COMPANY, A CORPORATION.

Opinion filed November 30, 1903.

**Undisclosed Principal Liable for Agent's Purchases.**

1. Where goods are purchased by an agent without disclosing his agency or the name of his principal, the latter may be held liable for the debt, when discovered.

**Same — Sufficiency of Complaint.**

> 2. The mortgagee of a stock of general merchandise entered into a contract with the mortgagor for the continuation of the business, and embodied the same in his chattel mortgage. Under the terms of the contract, the business was to be conducted by the mortgagor as the agent of the mortgagee, and under the contract he had authority, and it was his duty, to make purchases of goods to replenish the stock. The plaintiff sold and delivered goods to the mortgagor without knowledge of the existence of this contract. It is *held*, in an action to recover the purchase price of the goods so sold from the defendant mortgagee, as an undisclosed principal, that the trial court erred in granting defendant's motion to dismiss the case upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

Appeal from District Court, Grand Forks county; *Fisk,* J.

Action by F. A. Patrick & Co. against the Grand Forks Mercantile Company. Judgment for defendant and plaintiff appeals.

Reversed.

*Templeton & Rex,* for appellant.

The contract in question was carefully drawn, so that it would not be subject to attack under Red River Valley Nat. Bank v. Barnes, 8 N. D. 432, 79 N. W. 880, and Bergman v. Jones, 10 N. D. 520, 88 N. W. 288. The case at bar is analogous to Hubbard v. Tenbrook, 124 Pa. St. 291, 10 Am. St. Rep. 585, 16 Atl. 817.

It matters not that the instrument partakes of the nature of a chattel mortgage, if the relation of principal and agent was created, and was in existence when the goods were bought. The mortgagor was placed and continued in charge of the business and clothed with power to purchase goods. See Lamb v. Thompson, 48 N. W. 58; Henderson v. Mayhew, 41 Am. Dec. 434; Mechem on Agency, 695; Story on Agency, sections 446-449.

*C. J. Murphy,* for respondents.

The instrument set forth in the complaint is a chattel mortgage. It transferred no interest other than a lien. The mortgagor was the agent of the mortgagee only to keep track of the security and account for the proceeds, less proper expenditures. Red River Valley National Bank v. Barnes, 8 N. D. 441, 79 N. W. 880.

The mortgagor was at all times the real owner. The lien and interest of the mortgagee were wholly incident to and dependent

upon mortgagor's absolute ownership. There could be no secret or undisclosed agency where the known party was acting in his own business. Giving a mortgage on his property made the mortgagor none the less the owner and principal in his business. Such a rule destroys the entire value of chattel security. A mortgagor has a right to handle and use the mortgaged property so as to redound to the interest of his creditor and himself. The rule, that an undisclosed principal, when found, is liable for his agent's indebtedness, can only be applied where there is a real undisclosed principal. Where the proprietary interest in the business is in him who is carrying it on, he cannot be considered an agent, so far as acts performed in the care and management of the business are concerned. He cannot be both owner and agent.

YOUNG, C. J. The plaintiff sues the defendant, as an undisclosed principal, to recover the purchase price of certain goods sold and delivered to one Goertz, its alleged agent. When the case came on for trial, and before any evidence was offered, the defendant moved for judgment upon the ground that the complaint fails to state facts sufficient to constitute a cause of action. The motion was granted, and judgment was entered dismissing the action, with prejudice, and for costs. Plaintiff has appealed from the judgment, and assigns the order sustaining the above motion as error.

But a single question is presented for determination upon this appeal, and that is, whether the complaint states a cause of action. We are of opinion that it does, and that the motion for judgment should not have been granted. The complaint alleges, in substance, that on and prior to April 22, 1902, one J. H. Goertz was engaged in the general mercantile business at Rosehill, in Cavalier county; that on said date he entered into a written contract with the defendant, a copy of which is attached to and made a part of the complaint, whereby, as plaintiff contends, he transferred to the defendant the possession of his entire stock of general merchandise, and also the exclusive control, direction and supervision of said business, and became the defendant's agent in managing and conducting the same; that he continued in that capacity until about March 1, 1903, when another person was placed in charge; that during the time when Goertz was managing said business for the defendant, to wit, between August 18, 1902, and October 3, 1902, the plaintiff, at the special instance and request of said Goertz, sold and delivered to him goods, wares and merchandise of the reason-

able value of $749.52, which said sum the said Goertz promised and agreed to pay on the 1st day of November, 1902; that the said goods were sold and delivered to said Goertz, to be used by him in connection with and as a part of the stock of merchandise hereinbefore referred to; that the plaintiff did not ascertain that Goertz had been acting as agent for the defendant in the premises, nor did it learn of the existence of the contract in question until shortly prior to the commencement of this action; that upon ascertaining such facts the plaintiff duly elected to hold the defendant for the goods so sold and delivered to its said agent, and duly notified the defendant of such fact, and demanded payment; that no part of the said sum has been paid. The instrument above referred to, which plaintiff exhibits as a part of its complaint, and which it contends establishes the relation of principal and agent between the defendant and Goertz for the purchase of the goods, contains a chattel mortgage to defendant upon the stock of merchandise, and in addition a contract for the continuation of the business, its management, and the disposition of the proceeds of sales. The first half of the instrument is in form and substance an ordinary chattel mortgage, whereby Goertz mortgages to the defendant his entire stock of general merchandise, with additions, to secure the payment of a debt of $1,160.94, with authority to defendant to "sell the same as provided by law for the sale of mortgaged property" in case of default in payment, or when it deems itself unsafe or insecure. It is agreed that this portion of the instrument merely creates a lien upon the property, and establishes no other legal relation between Goertz and the defendant than that of mortgagor and mortgagee. The controversy is as to the effect of the remaining part of the instrument, which is as follows: "It is further understood and agreed that so long as the terms and conditions of this mortgage are kept and performed by the undersigned, the undersigned may retain possession of said property and conduct his business at the place aforesaid and sell and dispose of his said stock in trade and accumulations thereof in the ordinary course of trade for cash and credit, such credit sales, however, in no event to extend beyond the period of thirty days, this provision being for the purpose of allowing the undersigned to extend credit through each current month's business only, prompt collections of all accounts so extended to be made at the end of each and every month; provided, however, that such possession and control shall be un-

der the direction, supervision and control of the said Grand Forks Mercantile Company or such person as it may designate therefor in case said mortgagee shall at any time after the execution of this mortgage decide to take the possession and control of said business from the undersigned. It being expressly understood and agreed that the possession, control and management of the undersigned shall be considered the possession and control of the said mortgagee and the said undersigned during the continuance of this mortgage shall be considered as the agent of the said mortgagee. And the undersigned agrees to keep a strict, accurate and detailed account of all sales of said property made by him as aforesaid and of all cash and monies realized therefrom and accounts and notes contracted and received by him. The undersigned also agrees to keep a strict account of all expenses incurred in the conduct of said business, including reasonable compensation to him and all expenditures necessary and proper for the purpose of replenishing and keeping up said stock, the said undersigned being hereby authorized and required to keep up and replenish his said stock in trade so that the business shall be conducted profitably to both said mortgagor and said mortgagee; that such accounts so kept as aforesaid shall be rendered to the mortgagee at the end of each and every ten days from the date hereof till this mortgage indebtedness shall be fully paid; and at the time of the rendering of such account the undersigned agrees to pay over and deliver to said mortgagee, its successors and assigns, the entire proceeds of all sales and collections made by him in said business less the reasonable and proper amount necessary to defray the expenses of operating said business, replenishing said stock, and compensation to the undersigned as above stipulated, the same to be applied in reduction of said indebtedness. It is further agreed, that all purchases of stock for the purpose of keeping up said business shall be kept strict account of, itemized and reported to the mortgagee, and that the same and the whole thereof shall be under the supervision, control and direction of said mortgagee."

It is not disputed that, if the above contract creates the relation of principal and agent between Goertz and the defendant for the purchase of goods, the latter is liable. This follows upon elementary principles, for the law is well settled that, where goods are purchased by an agent without disclosing the name of his principal, the latter may be held liable for the debt when he is discovered.

Mechem on Agency, section 695; Inglehart v. Thousand Island Hotel Co., 7 Hun. 547; Beebe v. Robert, 12 Wend. 413, 27 Am. Dec. 132; Taintor v. Prendergast, 3 Hill, 72, 38 Am. Dec. 618; Coleman v. First National Bank of Elmira, 53 N. Y. 388; Hubbard & Co. v. Ten Brook, 124 Pa. 291, 16 Atl. 817, 2 L. R. A. 823, 10 Am. St. Rep. 585; Borcherling v. Katz, 37 N. J. Eq. 150. The only question at issue is whether, under this contract, the purchase of the goods by Goertz was in his individual capacity as principal, on his own account and for his own benefit, or for the benefit of the defendant, and as defendant's agent: If purchases by Goertz under this contract were for his own benefit and on his own account, then the defendant is not liable; but if, on the other hand, the contract establishes an agency in Goertz to make purchases for and on behalf of, and for the benefit of, the defendant, in that event the defendant is liable, and the complaint states a cause of action.

The validity of the contract is not challenged by counsel for either party. On the contrary, its validity is expressly assumed. As between the parties, this is, no doubt, a proper assumption. Wait on Fraudulent Conveyances, section 353; Greenebaum v. Wheeler, 90 Ill. 296. Whether it is valid as against judgment and attachment creditors of the mortgagor is a different question, and one upon which we need not express an opinion. We agree with the contention of the plaintiff that the contract created the relation of principal and agent between the defendant and Goertz, and that the purchase of goods from plaintiff by Goertz for use in the business was for the benefit of the defendant, and that it is liable therefor. It will be noted that the instrument is not a mere mortgage. If it were, the legal relations of the parties thereto would, of course, be merely that of mortgagor and mortgagee. They saw fit to embody in it additional provisions which are entirely foreign to a chattel mortgage proper, creating rights, obligations and duties different from and additional to those naturally arising out of the relation of mortgagor and mortgagee. If it be a fact that under the terms of the additional contract the defendant became the principal in operating the business—and we are clear that it did—it necessarily subjected itself to the liability of a principal in the purchase of goods by its agent, Goertz. It is not a sufficient answer to a suit against it for goods purchased for it by its agent that it was at the time of the purchase a mortgagee, and that the alleged agent was a mortgagor. It is true, Goertz had the title to the goods, and

he was the mortgagor, but he was also the defendant's agent, and when the additional relation exists the liabilities of the relation follow. We know of no rule of law which prohibits parties from incumbering their chattel mortgages with extraneous contracts, from which they hope to reap advantages not conferred by the ordinary chattel mortgage. Neither do we know of any rule of law or adequate reason, and none is suggested, which will enable them to escape such liabilities as are incident to the additional contract relation, merely because the instrument in which such contract is embodied also contains a chattel mortgage. Under the terms of the chattel mortgage proper, Goertz was entitled to possession of the mortgaged stock of merchandise until the defendant should take possession of the same for the purposes of foreclosure. But by the additional contract he transferred his possession and his right of possession to the defendant. He retained the bare legal title, but the possession of the entire stock of goods and the control and management of the business were transferred to the defendant. Goertz was left in possession, it is true, but not in his capacity as mortgagor or as owner, but merely as the defendant's agent. It is also true that he was authorized to sell and dispose of the stock, and to account for sales, and to keep up and replenish the stock, and make payment therefor from the proceeds of sales; but these were not acts in his own behalf as mortgagor and owner of the stock, but were duties required to be performed by him as defendant's agent. In the case of Red River Valley National Bank v. Barnes, 8 N. D. 432, 79 N. W. 880—a case in which the mortgagor was placed in charge of a stock of merchandise to sell the same at retail and account to the mortgagee—we held that the legal effect of the arrangement in that case was to create the relation of principal and agent between the mortgagor and mortgagee, and that in making sales and in conducting the business the mortgagor was the agent of the mortgagee. The cases are numerous in which mortgagees have constituted mortgagors their agents to sell the mortgaged goods. See cases cited in Red River Valley National Bank v. Barnes, supra. As between the parties, at least, there is no prohibition upon the creation of such an agency, and for the same reason it was competent for the mortgagee to make the mortgagor its agent to purchase goods to replenish the mortgaged stock. The parties themselves, by the express terms of the contract, have characterized their relation as that of principal and agent. The contract, after

stating that Goertz should remain in possession and control, states that "such possession and control shall be under the direction, supervision and control of the said Grand Forks Mercantile Company or such person as it may designate therefor in case said mortgagee shall at any time after the execution of this mortgage decide to take the possession and control of said business from the undersigned." In other words, the contract expressly provides that the possession of Goertz shall be the defendant's possession, that his control shall be its control, and that he is subject to be removed at defendant's election; and the complaint elsewhere alleges that he was in fact removed by the defendant prior to the commencement of this action, and another person placed in control of the business. It would seem that the provisions to which we have called attention leave no room for doubt that the parties intended to create the relation of principal and agent. But this is not all. The contract contains the following recital, which is conclusive as to their intention: "It being expressly understood and agreed that the possession, control and management of the undersigned [Goertz] shall be considered the possession and control of the said mortgagee, and the said undersigned during the continuance of this mortgage shall be considered as the agent of said mortgagee." The language just quoted was evidently inserted for the sole purpose of entirely removing the possibility of any uncertainty as to the legal relation which Goertz should sustain, and to effectually negative any right of possession or authority in the control and management of the business in him individually, as mortgagor or owner. It is thus seen that Goertz was made the defendant's agent in every capacity in which he was authorized to act. It was one of his duties under his agency to buy goods to replenish the stock. The complaint alleges that he bought the goods in question for that purpose, and at a time when the relation of principal and agent existed between him and the defendant. The complaint therefore states a cause of action.

It is said that there is no precedent to sustain a liability upon a state of facts like that which exists in this case. So far as we are advised, this is true. Neither is there a precedent to the contrary. The lack of precedents may be due to the fact that mortgagees of merchandise do not, as a rule, contract with their mortgagors to take over the possession, control and management of their goods and business, and undertake to prosecute the same as a business indefi-

nitely, for the sole purpose of securing its net profits to apply on the debt, as was done in this case. It is somewhat unusual for a mortgagee to waive his right to the proceeds of the mortgaged property, and contract merely for profits, which are necessarily uncertain. However that may be, precedents are not needed. The case turns upon the elementary principles of the law of agency. There is nothing sacred about the relation of mortgagors and mortgagees which prohibits them, as between themselves, from entering into other contract relations, if they see fit to do so. And when such additional contractual relations are established, their rights and liabilities thereunder as to each other and as to third persons are to be determined by the terms of their contract, the same as in any other case. Under the contract in this case, the mortgagor transferred the possession of his merchandise and business, including its control and management, to the defendant, and the defendant became the principal in the further prosecution of the business. The contract provides that the relation thus established shall continue "till this mortgage indebtedness shall be fully paid." The relation thus created was not terminated either by foreclosure by the mortgagee or by payment by the mortgagor, but was in full force and effect when Goertz purchased the goods in question from the plaintiff. As already stated, this case is, we believe, upon its facts, without precedent. The following cases are, however, closely in point upon principle, and sustain our conclusions: Inglehart v. Thousand Island Hotel Co., 7 Hun. 547; Hubbard v. Ten Brook, 124 Pa. 291,, 16 Atl. 817, 2 L. R. A. 823, 10 Am. St. Rep. 585.

The judgment is reversed. All concur.