KEITH and others Appellants, vs. ARMSTRONG and another, Respondents.

*January 18 — February 2, 1886.*

ATTACHMENT. *(1) Who may traverse affidavit: Voluntary assignment. (2) Partnership: Fraudulent disposition of property. (3) Order for return of property.*

1. The defendant may traverse the affidavit for an attachment, although he has made an assignment of his property for the benefit of creditors.
2. If a partner in an insolvent firm appropriates money belonging to the firm to the payment of his individual debts, this amounts to a fraud upon creditors of the firm, and is ground for an attachment.
3. Upon dissolving an attachment the court should order the property to be delivered up to the defendant. Sec. 2746, R. S.

APPEAL from the Circuit Court for *Juneau* County.

Attachment. The facts are stated in the opinion. After trial of the issues made by the traverse, the circuit court made an order vacating and discharging the attachment. From that order the plaintiffs appealed.

This case and that of *Hill v. Armstrong and another, post,* p. 231, were argued together.

For the appellants *Keith* and others there was a brief by *Turner & Barney,* and oral argument by *Mr. Turner;* and for the appellant *Hill* there was a brief by *Winsor & Winsor,* and oral argument by *Mr. F. Winsor.* To the point that payment of individual debts with partnership property is fraudulent, they cited *Wilson v. Robertson,* 21 N. Y. 587; *Menagh v. Whitwell,* 52 id. 146; Bump on Fraud. Conv. 257; *Lord v. Devendorf,* 54 Wis. 491; *Smith v. Howard,* 20 How. Pr. 121; *Kirby v. Schoonmaker,* 3 Barb. Ch. 46; *Schoverling v. Kover,* 15 Neb. 306; *Vernon v. Upson,* 60 Wis. 418; *Willis v. Bremner,* id. 622; *Yale v. Yale,* 13 Conn. 185; *Filley v. Phelps,* 18 id. 301; Collyer on Partn. sec. 405, note 2. When the defendant has voluntarily parted with

his right to the property he cannot traverse the affidavit. *Chandler v. Nash*, 5 Mich. 409; *Price v. Reed*, 20 id. 72; *Johnson v. De Witt*, 36 id. 95; *Macumber v. Beam*, 22 id. 396; *Zook v. Blough*, 42 id. 487; *Med. & Surg. Asso. v. Detroit Post*, 25 N. W. Rep. 477. An assignor for the benefit of creditors has not, until after the complete discharge of the trust by the assignee, any property in the goods conveyed. *Rodman v. Nathan*, 45 Mich. 607.

For the respondents there was a brief by *James B. Taylor*, attorney, and *J. H. Rogers*, of counsel, and oral argument by *Mr. Taylor*. To the point that if the debtor have a reversionary interest in the property attached he may move to dissolve the attachment, they cited 2 Wait's Pr. 184, 185; *Dickinson v. Benham*, 19 How. Pr. 410; *Brewer v. Tucker*, 13 Abb. Pr. 76; *Med. & Surg. Asso. v. Detroit Post*, 25 N. W. Rep. 477; *Sheldon v. Stewart*, 43 Mich. 574; *State Bank v. Whittle*, 41 id. 365; *Patterson v. Goodrich*, 31 id. 225.

COLE, C. J. The affidavit for the attachment was based on the ground that the defendants had assigned, conveyed, and disposed of their property with intent to defraud their creditors. The defendants, by special answer, traversed the facts in the affidavit, except as to the amount of the indebtedness. It appears that before this traverse was filed the defendants had voluntarily assigned their property under ch. 80, R. S., for the benefit of their creditors.[1] Now the objection is taken, on behalf of the plaintiffs, that the defendants had no right to traverse the facts set up in the affidavit, because they were not the party in interest and

[1] Before the property was seized under the attachment the defendants had executed an assignment to one George Lester, for the benefit of creditors, of all their property except that exempt from execution, but the bond of such assignee was not properly approved. After the writ of attachment was executed they made another assignment to the same assignee, which appears to have been regular.— REP.

were not entitled to have the property restored to them in case the attachment was dissolved. The statute provides if the court, on the trial of the issue made by the traverse, finds for the defendant, it shall tax the defendant's costs of such trial, and enter an order that the property attached be forthwith delivered up to the defendant. Sec. 2746, R. S. It is said, as the main object of the traverse is to obtain a return of the property attached, the language of this section shows that one who has voluntarily parted with his right to its possession cannot maintain this proceeding. We think this conclusion does not necessarily follow from the language used. The statute says the defendant in the action may traverse the affidavit, and, if he succeeds on the issue, costs are allowed him, and damages by reason of the taking of the property, which with the costs may be applied on the plaintiff's demand. It is obvious that though the defendant may have made an assignment after the attachment, still he has an interest in having his property equally and justly distributed among his creditors; certainly, he should have an opportunity to vindicate his character against an unfounded imputation of fraud. In *Howitt v. Blodgett*, 61 Wis. 376, it was decided that the assignee could not, without leave of the court first obtained, appear and traverse the affidavit, and, unless the assignor defendant has that right, it well might happen that a creditor, if unscrupulous enough to make a groundless charge of fraud against his debtor, would obtain an unjust preference over other creditors. An order for the restoration of the property, under the circumstances, could be made, of which the assignee might avail himself and obtain it under the assignment. So we are disposed to hold that the defendants had the right to traverse the affidavit, even though they had made an assignment. This view may be in conflict with some decisions in Michigan to which we were referred on

the argument, but, as the question is one arising under our statute, we cannot be controlled by them.

Coming, then, to consider the traverse on the merits, the inquiry is, Should it have been sustained? On this point we are constrained to disagree with the learned circuit court, and to hold that the attachment should not have been dissolved. This conclusion necessarily follows from two important facts which we think are abundantly established by the evidence. These facts are that the firm of *Armstrong & Everson* was insolvent — wholly unable to pay the firm debts — when *Armstrong* withdrew means from the concern to pay his individual indebtedness. That *Armstrong* did this is an incontestible fact. He swears to it himself, and there is no evidence which contradicts his statement. It may be assumed, then, as a verity in the case that *Armstrong* appropriated assets of the firm to the payment of his private debts. This he had no right to do at the expense of the creditors of the firm. The rule is elementary that a partner cannot appropriate partnership funds to the payment of his individual debts, unless the firm was at the time solvent and had sufficient property remaining to discharge all partnership liabilities. Any such application of the partnership funds is fraudulent as to the creditors of the firm, the partnership being insolvent. We have held that a preference of the debt of an individual partner in an assignment by the firm was fraudulent, and rendered the assignment void as to those creditors of the firm who elected to avoid it. *Vernon v. Upson*, 60 Wis. 418; *Willis v. Bremner*, 60 Wis. 622. See, also, *Viles v. Bangs*, 36 Wis. 131; *Cotzhausen v. Judd*, 43 Wis. 213; *McLinden v. Wentworth*, 51 Wis. 170; *David v. Birchard*, 53 Wis. 492. But the doctrine is too well settled to admit of discussion that partnership debts have in equity a priority of claim to be discharged from partnership property, and, as between a firm and its creditors, any

transfer of the firm property by a partner to pay his own debt is fraudulent, unless the firm is at the time solvent.

The next inquiry is, Does it appear that the firm was insolvent when *Armstrong* withdrew the partnership funds for the payment of his individual debts, or that it was insolvent when the attachment was made. As to that question, we think the evidence is entirely conclusive that the firm was unable to pay its debts as they matured, for some time prior to January, 1885. The firm had been in business only about ten months. *Armstrong* said he put into the concern something over $1,100 in merchandise. He was owing on this stock about $800. He also owed some $500 or $600 on notes. He drew out of the concern $2,242, part of which sum went to pay what he owed on the stock which he put in. As his debts became due he drew funds from the firm to pay them up to December, 1884. He testifies in substance that an effort was made to get favors from their creditors; in other words, an extension. Not succeeding in this, he told his partner, *Everson*, how the business stood; showed him the amount of debts due, and soon to become due; and suggested putting the concern into the hands of a receiver to settle up matters, and thus keep off attachments. This shows the embarrassment of the firm, and its utter inability to pay its debts. If necessary, we might refer to some things in the testimony which disclose the unfitness of the partners, from education, habits, and business qualifications, to conduct a mercantile business with prudence and success. But we shall not dwell on these matters. Suffice it to say that the books and all the testimony conclusively show that the firm was insolvent while *Armstrong* was withdrawing its capital to pay his own debts. It is said, according to the inventory, the assets exceeded by a few hundred dollars all the firm liabilities. But we suppose it is common experience that there is always a great loss in disposing of such assets at forced

sale. It is not at all probable that the partnership property will pay the creditors in full. It is quite idle to talk about there being a surplus after the debts are paid. It seems that *Everson* was the only one who put in much capital. He did not draw out much. He left the management of the business to his·partner. Shortly before the failure *Everson* disposed of some of his individual property to pay his private debts. The learned circuit court held that there was nothing in these transactions which afforded any ground for sustaining the attachment. From the view we have taken of the case, it is unnecessary to consider whether the court was right in that conclusion or not. The attachment may well be sustained on the ground we have indicated, without seeking for other reasons to sustain it.

On dissolving the attachment the court made no order that the property attached should be delivered to the defendants as the statute requires. Correctly speaking, such an order should have been made, so that the assignee, as we have said, could have obtained the property. We merely call attention to the omission of the court to make such an order, though it cannot affect our decision. As the case stands, the officer will hold the property under the attachment.

*By the Court.*— The order of the circuit court dissolving the attachment is reversed, and the cause is remanded for further proceedings according to law.