### QUEBEC BANK v. CARROLL *et al.*

1.   Where an attachment was issued against defendant on the ground of his non-residence, he being, however, in due time, personally served with summons in the county where the attachment action was pending, upon his motion to discharge the attachment, upon traverse of the affidavit of his non-residence, it appearing that during all the time in which he claims to have been a resident of D_akota he has maintained, without interruption, his family establishment in a foreign jurisdiction, has been continually on the official list of voters there, and has in two of said years at least actually voted there at a general election; that in judicial proceedings in said foreign jurisdiction during the same time, he has repeatedly made affidavits that he was a resident of said foreign jurisdiction, in the same proceedings has given bonds, in which his residence was so described, and in justifying under the same has de-

posed that he was a resident freeholder in said foreign jurisdiction; that during the same time he has executed several mortgages, in all of which he has described his residence in the same terms; that, shortly prior to the issue of the attachment, he made a general assignment, prepared and executed within and under the laws of said foreign jurisdiction, in which jurisdiction he therein stated his residence to be, and in pursuance of which he executed a number of deeds of conveyance to the assignee, in all of which his residence was so described,— *held*, that such acts and conduct on his part were utterly inconsistent with an understanding on his part that during such time he was a resident of Dakota, and that, as the fact of residence depends largely upon intention, it was error in the court below, as against all these facts, undisputed and unexplained, to discharge the attachment on the issue of the non-residence of said defendant.

2. While the assignor in a general assignment for the benefit of creditors has such a revesionary interest in the assigned estate as will entitle him to move for a discharge of an attachment on account of the non-existence of statutory grounds for the attachment, he is not entitled to ask for such discharge on account of such assignment as a means of protecting the property assigned, the assignee, and not the assignor, being the guardian of the assigned estate.

(Syllabus by the Court. Argued April 18, 1890. Opinion filed Dec. 18, 1890.)

Appeal from district court, Hamlin county. HON. JAMES SPENCER, Judge.

Motion to discharge an attachment. Allowed. Plaintiff appeals. Reversed.

The material facts are stated in the opinion.

*A. B. Melville*, for appellant.

While the defendant could move to discharge the attachment on the ground that the allegation in plaintiff's affidavit for an attachment as to non-residence was untrue, he is not entitled to move for a discharge on the ground that he had made an assignment of all his property for the benefit of his creditors in Ontario, Canada, prior to the attachment. The assignee alone could urge that ground in an action to test title. Drake on Attachm, § 418; Langdon v. Conklin, 10 O. St. 4∴9; Mitchell v. Skinner, 17 Kan. 563. The statutes of the Province of Ontario relating to assignments for the benefit of creditors, do not provide for a voluntary assignment but are in the nature of insolvency laws, and have no extra territorial effect. McClure v. Campbell, 37 N. W. 343; Jenks v. Ludden, 27 N. W. 188; Sturgis v.

Shields, 4 Wheat. 193; Clarkson v. Ontario Bank, Ontario App. Rep. 166. A voluntary assignment made in one state will not be recognized in another state, when the law and policy of that other is at all repugnant to the law of the state where the assignment is made. Warner v. Jaffray, 96 N. Y. 248; Bank v. Lacombe, 84 N. Y. 367; Green v. Van Buskirk, 7 Wall. 139; Faulkner v. Hyman, 6 N. E. 846; Moscby v. Burrow, 52 Tex. 396; Woods v. Parsons, 27 Mich. 159.

*Glass* and *Van Buskirk,* for respondent.

A voluntary assignment made in the province of Ontario between British subjects, residents there, will be upheld by the courts of this country if valid. While an assignment by law has no extra territorial force, a voluntary one is the exercise of a personal right of the proprietor to dispose of his effects for honest purposes and will be upheld everywhere. Burrill on Assignments, § 303; Whipple v. Thayer, 16 Pick. 25; Means v. Hapgood, 19 Pick. 107; Richardson v. Forepaugh, 7 Gray, 546; Willett v. Waite, 25 N. Y. 583; Plastero v. Abraham, 1 Paige 236; Hanford v. Paine, 78 Am. Dec. 586; Moore v. Bunnell, 31 N. J. L. 90; Bentley v. Whitmore, 19 N. J. Eq. 462; Richardson v. Leavitt, 45 Am. Dec. 90; Emer v. Deynoldt, 39 Mo. 69; Halstead v. Straus, 32 Fed. 279; Butler v. Wendell, 23 N. W. 460; Green v. Cross, 10 N. W. 459; King v. Glass, 34 N. W. 820; *In re* Lumber Co. 16 N. W. 700; Campbell v. Coal and Iron Co. 10 Pac. 248.

KELLAM, J. The attachment was issued from said court on the 6th day of March, 1889, upon the affidavit of David B. Crombie, manager and agent of plaintiff and appellant, which after stating the cause of action and the grounds thereof as required by subdivision 1, § 4995, Comp. Laws; further states "that the defendants are each of them not residents of the Territory of Dakota;" and this is the only statutory ground stated or attempted to be stated for the issuance of the attachment. On the 7th day of March the attachment was levied upon property, both real and personal, as the property of the defendant John Carroll on the 20th day of March personal service of the summons and complaint was made on said defendant John

Carroll, in said county of Hamlin, and on the 29th day of the same month order for service by publication was made against all the other defendants. The defendant John Carroll, upon notice, moved the court to discharge said attachment, because the same was "improvidently issued, the facts upon which said warrant of attachment was issued being untrue." Upon the hearing of the motion, a great number of affidavits, bearing upon the question of defendants' residence, which will be considered hereafter, was presented and read by both sides. In addition to these, and in behalf of the defendant Carroll, other affidavits were read, which do not appear to have been objected to, tending to show that, prior to the issuance of the attachment, he had made a general assignment of all his prop erty to one Clarkson, of Toronto, Ont. This assignment was made under the statutes of said province, and able arguments were made by both sides upon the extraterritorial effect of such foreign assignment, appellant, however, contending that it was not competent for the court below to consider that question upon this motion; respondent, on the other hand, claiming that as the affidavits were used without objection, and treated by both court and parties as properly in the case, and proper to be considered, it is now too late to review that question. Thus two separate questions are presented: *First*, as to the residence or non-residence of defendant John Carroll, and, *second*, as to the effect of the assignment, if such fact can be shown and considered, in the determination of defendant's motion to discharge the attachment. There are not less than sixty affidavits bearing with more or less directness and force upon the question of the residence of defendant John Carroll. The facts, so far as undisputed, are these: Defendant Carroll was formerly a resident of St. Catherines, in the province of Ontario, maintaining his family establishment in that city; that his business was largely that of a contractor on public works both in Canada and the United States; that at the time of the alleged assignment, and shortly prior to the issuance and levy of this attachment, he had property both real and personal, in the province of Ontario, and in the territory of Dakota, and

that, since the fall of 1883, he has been the owner of, and has conducted either . personally or by his agents an extensive farm in said Hamlin county and has during that time, been the owner of a large amount of personal property thereon. These facts are not important of themselves, but are conceded, and may serve as a helpful introduction to the discussion of the immediate question involved, to-wit: Was defendant John Carroll a non-resident of the Territory of Dakota on the 6th day of March, 1889?

The courts are substantially agreed that residence depends largely upon intention, but not upon that alone. The intention must materialize into or be attended or followed by consistent overt acts or conduct, and so, to determine the question of the residence of defendant Carroll,—he having declared in his affidavit that, in the fall of 1883, he came to Dakota with the intention of then changing his residence from Canada to Dakota, and has ever since retained and possessed that intention, —it becomes material to inquire whether his acts and conduct since that time have been consistent or inconsistent with such alleged intention, for, to the extent that they have been consistent therewith, confidence is established in the candor and truthfulness of his statement as to his intention, while, to the extent that his conduct has been inconsistent with such intention, the probative force of his statement is weakened. In his affidavit traversing the statement of the procuring affidavit as to his non-residence, and upon which he moves to discharge the attachment, he says "that, during the fall of 1883, he became an actual resident of the said county of Hamlin in the said territory, and since that time has been an actual resident of said Hamlin county; that, during the fall of 1883, he moved from said St. Catherines, Ontario, * * * to the said county of Hamlin; * * * that he came to the said county of Hamlin for the express purpose of establishing a residence in said county; * * * that it was his intention when he commenced to reside in said Hamlin county; that he has never changed his intention, and that he is now in said Hamlin county pursuant to the intention he formed at the time he commenced to reside

in that county." Thus not only in effect, but in express words, he declares that his intention to then become in fact a resident of Hamlin county, was formed in the fall of 1883, and that he then carried such intention into practical and active effect by moving into said county, thus accomplishing and establishing such residence from that time. It follows then if he was a resident of Hamlin county on the 6th day of March, 1889, when the attachment was issued, it was not the result of any recently formed intention, or actual change, but because of a residence established years before, and continuing from the fall of 1883 to that time. With this understanding in mind we may profitably compare defendant's present claim as to his residence from the fall of 1883 to the spring of 1889, with his repeated and voluntary acts during that time, bearing with more or less weight and directness upon such question of residence. From the affidavits used in the court below, and now before us, it appears—and in these respects the affidavits are neither contradicted nor explained—that, between the fall of 1883 and the spring of 1889 the defendant executed quite a number of mortgages and other sealed instruments in which he uniformly described himself as "John Carroll of St. Catherines," etc. On the 23d day of February, 1889, two weeks prior to the date of the attachment, he executed the general assignment already referred to, in which he describes himself as "John Carroll of St. Catherines, in the county of Lincoln," etc. Pursuant to this assignment he made several deeds conveying real estate to the assignee, in all of which his residence is given as "the city of St. Catherines." That at least in the years 1884 and 1889, as appears by the voters' lists for St. Patrick's ward in said city of St. Catherines,—the lists for those years being the only ones preserved,—he voted in said ward of said city, and this is, in part, confirmed by the positive statement by one affiant that he saw him present at such election in January, 1889, and that he voted thereat. In December, 1887, in "the high court of justice" in Ontario aforesaid, he made at least three several affidavits, and gave and executed as many bonds, apparently in proceedings in said court, for the appropriation of lands for

the use of a railway company, of which he was a director, and that in each of these affidavits and bonds he described his residence as "the city of St. Catherines." In the body of these affidavits he swears that he is and has been "a resident of the city of St. Catherines for a number of years;" that he "is and has been a resident of the county of Lincoln for about ten years;" and in justifying under said bonds he deposed that he was then "a resident inhabitant of the province of Ontario;" that in July, 1886, he told Evans, county surveyor, that he did not intend to establish a home in Dakota; that he had too good a home in Canada to leave; that he intended to have his son Thomas live in Dakota.

In the fall of 1885 defendant wrote numerous letters from Hamlin county to plaintiff in which he constantly speaks of his plans for returning "home," evidently referring to St. Catharines. While these acts and admissions of defendant Carroll do not afford conclusive evidence of his residence in St. Catharines, Ont., during the time covered by this transaction, it is a significant fact that they are entirely inconsistent with an understanding on his part that during all this time his residence was in Hamlin county, Dak. We concede the reasonableness of respondent's claim that, upon a question of intention, no one is so well qualified to speak as he whose intention is in question, but in such case, however positive may be his declaration, it is by no means conclusive. Recognizing the fact of his superior knowledge of his own intention, we have confined our inquiry to his own voluntary acts and declarations. During the time covered by this inquiry, he has spoken upon this question at various times and in divers manners, and, up to the time of making his affidavit for the discharge of this attachment, his declarations, both by word and act, have, in our judgment, uniformly been to the effect that his residence was during all this time in the city of St. Catherines in the province of Ontario, and consequently not in the county of Hamlin, in the Territory of Dakota. The conclusion is fortified and confirmed by the further facts, appearing from many affidavits of his neighbors and officials of said city of St. Catherines, that dur-

ing all this time there was no apparent change or interruption
in the maintenance of his family establishment in said city, and
that every year from 1883 to 1889 inclusive his name appeared
upon the list of voters in said city. A large number of other
affidavits were used upon the hearing of this motion in the
court below, bearing upon the question of the residence of de-
fendant Carroll, but in the main these were the expressions of
the opinion only of the several deponents, necessarily depend-
ing in each case upon the extent and character of his informa-
tion, and his knowledge of what constitutes residence, and pos-
sibly in a few cases upon his relation to the parties on either
side, or his interest in the event, and could not, of course, be
so forceful or convincing as the acts and declarations of the de-
fendant himself. It is hardly necessary for us to say further
that, in our judgment, the evidence before us very strongly
preponderates in favor of the non-residence of defendant John
Carroll on the 6th day of March, 1889, and that the attachment
should not have been discharged on that issue.

Passing now to the matter of the assignment, we are first
to inquire whether this court may now properly consider the
affidavits, setting up such assignment, in reviewing the deter-
mination of the court below upon this motion. The statutory
ground upon which the attachment issued was the non-residence
of the defendant, and this alone. The motion to discharge put
only this fact in issue; for it was made upon an affidavit stat-
ing. as its grounds, that the facts upon which said warrant of
attachment was issued were untrue. The affidavits were clearly
outside the issue tendered by defendant himself, but as plaintiff
made no objection to their use upon the hearing, or their con-
sideration by the court, and as they come to us duly certified
as a part of the papers upon which the court below made its
determination, we think we are bound to consider them as prop-
erly in the case, and to give to the facts which they tend to
prove whatever weight they are entitled to, in disposing of the
question involved. Conceding then, for the present, that this
assignment, executed under the laws of Ontario, was fully op-
erative here, could the defendant himself, the assignor, show

the fact of such prior assignment, and by such showing entitle himself to a discharge of the attachment? It must be remembered that levy of the attachment upon property of the defendant was not essential to confer jurisdiction in this case, for the summons and complaint had been personally served on the defendant, in Hamlin county. In numerous cases it has been held that an insolvent debtor, who has made a general assignment for the benefit of his creditors, has such a reversionary interest in the assigned estate that he may move to vacate an attachment upon a direct traverse of the procuring affidavit. See Dickerson v. Benham, 20 How. Pr. 343; Bank v. Randall, 38 Minn. 382, 37 N. W. Rep. 799; Keith v. Armstrong. 65 Wis. 225, 26 N. W. Rep. 445. Of the correctness of this conclusion. we have little doubt, though a different doctrine is maintained in Michigan. Chandler v. Nash, 5 Mich. 409; Price v. Reed, 20 Mich. 72. And so, in this case, the defendant's right is not questioned to move for a discharge of this attachment, for the reason that the statutory ground upon which it was issued had, in fact, no existence; but could he maintain such application upon the sole ground that prior to the issue and levy he had assigned to another all the property which had been or might be levied upon thereunder? Without doubt the assignee might, in different ways, assert his right to the property so assigned, but we do not clearly perceive upon what ground the defendant himself can demand, in his own interest, that the attachment be dissolved. It can hardly be upon the ground that the property attached no longer belongs to him, for that would only be, on his part, a gratuitous and officious assertion of the rights of others, for whom he shows no authority to speak. We do not think it is competent for a defendant to move the court to discharge an attachment on the ground that the property attached does not belong to him. Langdon v. Conklin, 10 Ohio St. 439; Mitchell v. Skinner, 17 Kan. 563; Sims v. Jacobson, 51 Ala. 186; Furman v. Walter, 13 How. Pr. 359. While it is true that property covered by a valid assignment is not subject to attachment for the debts of the assignor, it is quite as true that the property of A. is not attachable for the debts of B.; and

yet we have seen that such fact is not available to B., the defendant in attachment, on motion to discharge, and we do not see why the rule and the reason are not the same in both cases. By the act of assignment, the defendant has placed his property under the dominion and protection of the assignee, and to that extent, and for that purpose, has put him in his place. Whether the assignee could successfully claim a discharge of this attachment, on account of the assignment, is a question which will be entitled to consideration when he makes claim to such relief as the trustee of the assigned estate; but he is asking nothing here, and is not represented in this application. He, and not the assignor Carroll, is the guardian of the assigned estate. If he is in custody of this property under a valid assignment, it is for him, and not his assignor, to select and adopt the legal means by which he will protect it. He may prefer a remedy other than a motion to discharge, conceding that that is available to him, and he and not the assignor is entitled to determine what particular remedy he will pursue. The assignor Carroll might ask to have the attachment discharged on account of the non-existence of the grounds upon which it was issued, for they are personal to himself, and go directly to the validity of the warrant in its inception; but to allow him to move for such discharge on account of the assignment, and as a means of protecting the assigned estate, is a plain invasion of the rights and province of the assignee. It might be that in case of assignment or other sequestration, by order of the court, when the property was clearly in *custodia legis*, such suggestion might come from any party interested, or even from an *amicus curiae*; but here the assignment of the property, and the selection of an assignee, were the private and voluntary acts of the parties interested, of which the court took no cognizance, and had no jurisdiction, except in contingencies, which in this case are not shown to exist. We are of the opinion that the court below was wrong in discharging the attachment upon the motion of defendant Carroll, on the ground that prior to the attachment he had assigned the property attached to Clarkson for the benefit of his creditors. The order of the district court discharging the warrant of attachment is reversed. All the judges concurring.