((88 N. W. Rep. 281.)

---

HERMAN BERGMAN, *et al. vs.* EVAN M. JONES.

Opinion filed Nov. 26, 1901.

**Fraudulent Conveyances — Chattel Mortgages — Partnership — Individual Debts—Delaying Creditors.**

An insolvent copartnership engaged in a general merchandise business executed a chattel mortgage upon its entire stock of merchandise to secure the payment of certain pre-existing individual debts of the partners. Said mortgage provided that the mortgagors should re-

main in possession and continue the business practically without change, and gave them control of the proceeds of sales. The mortgagors reserved the right to sell the mortgaged goods for cash, and out of the proceeds of the sales thereof to pay all of the expenses of conducting the business, and to replenish the stock of goods, which stock was to be kept up to the same value as when the mortgage was given. They also agreed to account monthly, and promised to pay at such accounting to the mortgagees, upon the mortgage debt, the net profits of the business. The mortgage contained no provision covering new goods. It is *held*, in an action of conversion by the mortgagees against the sheriff who seized said goods under a warrant of attachment issued in an action against the partnership by partnership creditors, that said mortgage is fraudulent and void as to creditors, for the reasons: First, that the necessary effect of the conditions contained therein was to hinder and delay partnership creditors in the collection of their claims, and was primarily for the benefit of the mortgagors, and not for the benefit of the mortgagees; and for the further reason that it was an attempted appropriation by an insolvent partnership of its property to the payment of debts which the partnership was under no legal or moral obligation to pay, to the prejudice of partnership creditors.

Appeal from District Court, Richland County, *Glaspell*, J.

Action by Herman Bergman and another against Evan M. Jones, sheriff, for conversion of mortgaged property. From a judgment in favor of defendant, plaintiffs appeal. Modified.

*W. E. Purcell* and *C. L. Bradley*, for appellant.

The appellant is entitled to tax costs under § 5579, Rev. Codes. Our statute is a copy of § § 304 and 305, New York Code of Civil Procedure, and has been construed. *Griffin* v. *Brown*, 35 How. Pr. 372; *Ryan* v. *Doyle*, 40 How. Pr. 215. It is not necessary for mortgagees to declare the mortgage due before they demand possession of the mortgaged property from an attaching creditor of the mortgagor. The failure of the attaching creditor to comply with the demand subjects him to liability in trover. *McGraw* v. *Bishop*, 85 Mich. 72, 48 N. W. Rep. 167. Generally no notice of the mortgagee's election to consider the whole debt due is necessary. His proceeding to enforce the mortgage sufficiently shows his election. *Harper* v. *Ely*, 56 Ill. 170; *Heath* v. *Hall*, 60 Ill. 344; *Hoodless* v. *Reid*, 112 Ill. 105; *Johnson* v. *Van Velsor*, 43 Mich. 208; *Buchanan* v. *Ins. Co.*, 96 Ind. 510; *Lowenstein* v. *Phelan*, 17 Neb. 429; *Young* v. *McLean*, 63 N. C. 576; *Hunt* v. *Keach*, 3 Abb.'s Pr. 204. The warrant under which the marshal seized the property, under § 69 of the bankruptcy act, was void on its face, because the recitals of the conditions on which it was issued showed it to be without jurisdiction. *In re Kelley*, 91 Fed. Rep. 504. If there had been a proper showing and bond the marshal could not have been authorized to seize the property in controversy for the reason that it was not, at the time of the seizure in the hands of the bankrupts. *In re Rockwood*, 91 Fed. Rep. 363; *In re Ward*, 104 Fed. Rep. 985; *In re Hults*, 12 Fed. Cas. 864; *In re Manahan*, 16 Fed. Cas. 569. The

evidence was conflicting; the credibility of witnesses was questioned, and the case was properly one for the jury. *Carver* v. *Plank Road Co.*, 61 Mich. 584; *Houck* v. *Gue*, 46 N. W. Rep. 280; *Russell* v. *Smith*, 23 S. E. Rep. 5; *Dirimple* v. *Bank*, 65 N. W. Rep. 501; *Chicago, Etc., Ry. Co.* v. *Olney*, 71 Fed. Rep. 95. If different minds may honestly draw different conclusions from the facts, whether disputed or not, the case should be left to the jury. *Stevens* v. *Pendleton*, 85 Mich. 157; *Knight* v. *Towles*, 62 N. W. Rep. 964; *Milne* v. *Walker*, 59 Ia. 186; *Smith* v. *Coe*, 55 N. Y. 678; *Overton* v. *Mining Co.*, 131 Ind. 135; *Suiter* v. *Park Natl. Bank*, 53 N. W. Rep. 205. The question of intent to secure a preference is one of fact for the jury. *Giddings* v. *Dodge*, 1 Dillon, 116; *In re Seeley*, 21 Fed. Cas. 1007. The bankruptcy court did not have the power to deprive the sheriff of possession summarily. *Smith* v. *Mason*, 14 Wall. 419; *In re Rockwood*, 91 Fed. Rep. 363; *In re Kelley*, 91 Fed. Rep. 504. Where property has been seized by a court officer, no other court not having a supervisory control, whose process has first taken the property, has a right to interfere with possession. *Buck* v. *Colbuth*, 3 Wall. 334; *Freeman* v. *Howle*, 24 How. 450; *Covell* v. *Heyman*, 111 U. S. 176; *Tua* v. *Carriere*, 117 U. S. 201.

*McCumber, Bogart & Forbes* and *Fred B. Dodge,* for respondent.

It was not error for the district court to deny costs to plaintiff. *Langhram* v. *Orser*, 15 How. Pr. 281; *Landsburger* v. *Magnetic Tel. Co.*, 8 Abb.'s Pr. 735; *Peet* v. *Warth*, 1 Bosw. 653; *Pyle* v. *Hand Co.*, 1 S. D. 385; *Laney* v. *Ingalls*, 5 S. D. 184; *Township* v. *Dow*, 4 S. D. 163. The amount claimed in the summons or complaint in the action in the circuit court is not material if the amount recovered is less than $50.00, and the justice court would have had jurisdiction of the action if the amount recovered had been claimed in an action in the justice court. *Kreuger* v. *Zirbel*, 2 Wis. 173; *Alexander* v. *Hard*, 42 How. Pr. 131; *Mechl* v. *Schwieckart*, 67 Barb. 599. The rule that the construction of a statute by one state shall be regarded as accompanying the adoption of the statute into another, is not an invariable rule of construction. *Ingraham* v. *Regan*, 23 Miss. 213; *Little* v. *Smith*, 5 Ill. 402; *Rigg* v. *Wilton*, 54 Am. Dec. 419. The mortgage was not valid because it contained no provision that the subsequently acquired property, or property purchased in replenishment, should be covered by the mortgage. *Brackett* v. *Harvey*, 91 N. Y. 214; *McKay* v. *Shotwell*, 6 Dak. 124. The debts secured by the mortgage were individual debts, and the property mortgaged was partnership property. The mortgage was therefore fraudulent and void. Bates on Partnership, § 586; *Heineman* v. *Hart*, 55 Mich. 64; *Keith* v. *Fink*, 47 Ill. 272; *Patterson* v. *Seaton*, 70 Ia. 689; *Cron* v. *Estate*, 56 Mich. 8; *Vernon* v. *Upson*, 60 Wis. 418; *Keith* v. *Armstrong*, 65 Wis. 225; *Meraugh* v. *Whitkell*, 52 N. Y. 146; *Wilson* v. *Robertson*, 25 N. Y. 187. The moment there is an adjudica-

tion in bankruptcy, and a trustee is appointed, the property of the bankrupt vests in the trustee. This included property subject to a valid mortgage. *In re Brooks*, 91 Fed. Rep. 508. Its effect upon a judgment is ipso facto to dissolve it. *In re Richards*, 96 Fed. Rep. 935; *In re Francis Valentine Co.*, 93 Fed. Rep. 953. And notwithstanding a stranger claiming title has made a claim for the property against the sheriff, the sheriff cannot surrender to other than the court. *In re Francis Valentine Co.*, 94 Fed. Rep. 783. The court was justified in treating the mortgage as absolutely void in the face of the adjudication in bankruptcy, because it operated to charge partnership assets with individual liabilities. *In re Jones*, 100 Fed. Rep. 783. And because it was a preference given to secure a pre-existing debt. *In re Wolfe*, 98 Fed. Rep. 84; *In re Cobb*, 96 Fed. Rep. 821.

YOUNG, J. The plaintiffs seek in this action to recover damages from the defendant, as sheriff of Richland county, for the alleged conversion by him of a stock of general merchandise upon which the plaintiffs claim to have had a mortgage. Their damages are laid at the sum of $2,966.81, with interest thereon from the date of the alleged conversion. The facts and proceedings which are essential to a determination of the questions presented on this appeal may be stated as follows: The property in controversy, at and prior to its seizure by this defendant, was owned by a copartnership composed of August Bergman and Henry Maack, who were then engaged in the general mercantile business in the village of Lidgerwood, in said county, under the firm name of Bergman & Maack. The chattel mortgage upon which plaintiffs' rights in this action are based was executed by said copartnership on December 16, 1898, and filed in the office of the register of deeds of said county on December 19, 1898, and covered the property in question. On December 22, 1898, the defendant sheriff seized said property under a warrant of attachment in an action pending in the district court of Richland county, wherein Wyman, Partridge & Co. was plaintiff and said copartnership was defendant, upon a debt due from said copartnership amounting to $1,367.46, for goods sold and delivered to it by said attaching creditor. On December 29, 1898, the plaintiffs caused a demand to be made upon the defendant for the property covered by their mortgage, and the same was refused. On January 3, 1899, bankruptcy proceedings were instituted in the United States district court for the district of North Dakota against said copartnership, and on the 4th day of January, 1899, a warrant issued out of said court under which the marshal of said court took from the possession of the defendant all of the goods theretofore seized by him as above stated. On Janaury 23, 1899, said firm of Bergman & Maack was adjudged bankrupt, and on February 3, 1899, a trustee was appointed to administer the trust estate; and said trustee, as such, received from the United

States marshal the goods in question, for the purpose of administration under the authority of the bankruptcy court. The mortgage upon which plaintiffs base their right of recovery is as follows: "Know all men by these presents, that August Bergman and Henry M. Maack, copartners doing business under the firm name and style of Bergman & Maack at Lidgerwood, Richland county, North Dakota, parties of the first part, being justly indebted to Herman Bergman and Fred D. Maack, parties of the second part, in the sum of two thousand nine hundred and sixty-six and 81-100 dollars, which debt is hereby confessed and acknowledged, have, for the purpose of securing the payment of said debt, bargained, granted, sold, and mortgaged, and by these presents do bargain, sell, and mortgage, unto the said second parties, their heirs and assigns, all the personal property described as follows, to-wit: All that certain stock of merchandise, consisting of dry goods, boots, shoes, hats, caps, clothing, notions, glassware, crockery, woodenware, and all other articles of merchandise, now contained in the two-story store building owned by Ralph Maxwell and leased to the said first parties and situated upon lot number two (2) of block number 11 of the village of Lidgerwood, in said county of Richland and state of North Dakota, to the said second parties, their heirs and assigns, forever. Provided, however, that these premises are upon this express condition: That if the said first parties shall pay or cause to be paid unto the said second parties, or their heirs or assigns, the said sum of two thousand nine hundred and sixty-six and 81-100 dollars, according to the conditions of two certain promissory notes of even date herewith, as follows, to-wit: One note for the sum of one thousand one hudred and forty-eight and 59-100 dollars, due and payable on the 1st day of November, 1899, to the order of Fred D. Maack, one of the second parties, and one note for the sum of one thousand eight hundred and eighteen and 22-100 dollars, due and payable on the 1st day of November, 1899, to the order of Herman Bergman, one of the said second parties,—and interest thereon at the rate of eight per cent. per annum, then these presents to be null and void; otherwise to remain in full force and effect. And the said first parties hereby covenant and agree to and with the said second parties as follows, to-wit: (1) That they will take good and proper care of the said goods, wares, and merchandise above described, and will keep and maintain the said goods, and all thereof, at the said building wherein they are now situated, as above described, and that they will keep the said stock of goods, wares, and merchandise at its present value by replenishing all goods sold therefrom as hereinafter provided. (2) That they will sell the said goods, wares, and merchandise in the usual course of trade, for cash only, and will keep an accurate and correct account of all goods so sold, which said account shall be open to the inspection of the said second parties, their assigns or agents. (3)

That they will replenish all goods, wares, and merchandise so sold from said stock from time to time, and pay for same cash at time of purchasing same, and will not buy goods on credit to replenish said goods, wares, and merchandise so sold and delivered. (4) That they will pay the expense of selling said goods, wares, and merchandise out of the proceeds of said sales,—such expenses to consist only of freight on goods bought to replenish said stock, rent for said building, fuel and light for same, taxes and insurance upon said goods, and the further sum of thirty dollars per month for each of the said first parties for living expenses,— and will render an account of the same to the said first parties on the first day of each and every month during the time that these presents shall remain in force and effect. (5) That on the first day of every month during the time that these presents shall remain in force and effect they will render to the said second parties a full, true, and correct statement of the sales from said stock of goods, wares, and merchandise, and the receipts therefrom, together with the amounts expended in replenishing the goods, wares, and merchandise so sold, and the expenses of conducting the said business, and will pay to the said second parties each month the excess of the receipts over and above the amounts so paid for replenishing the said goods, wares, and merchandise and the expenses of conducting the said business; the same to be applied upon the said indebtedness until the whole thereof shall have been paid in full, together with the interest thereon." Then follows the usual power of sale for default in the condition of the mortgage. The above chattel mortgage and the notes therein described were signed by both members of the copartnership. The notes secured did not represent partnership debts, but represented individual debts of the partners to the payees in said notes, which debts were of at least a year's standing. The note to Herman Bergman represented an amount owed to him by his son August Bergman, and the note to Fred D. Maack covered an amount due him from his brother Henry M. Maack. Both of the mortgagees resided at Norwood, Minn. The mortgage in question was given under the following circumstances: Early in December, 1898, Henry Maack went to Norwood and conferred with his brother and Herman Bergman in reference to giving security for their private debts to plaintiffs upon this stock of merchandise. Henry Maack then "partly agreed to give the mortgage on their stock of goods at Lidgerwood," and on his return he was "to submit the matter of security to August Bergman." The entire matter as to the form and contents of the mortgage was left to the mortgagors, and it was expected that the mortgagors would run the business the same way as before, and that they would use such an amount of the proceeds of sales as they would need to support their families and to purchase new goods. Upon his return the two partners went to an attorney in Lidgerwood, and under their directions he drew the mortgage and notes

in question, and the mortgage was then executed and filed as before stated. The mortgagees were not aware that the mortgage had been executed until the attorney who drew it informed them of the attachment of the goods.

The case was tried to a jury. At the close of the testimony, counsel for defendant moved for a directed verdict for defendant upon the ground that it conclusively appeared from the evidence (1) that the mortgage under which plaintiffs claim a right or interest in the property attached was fraudulent and void as to the creditors of the mortgagors; (2) that both the lien of the attachment and plaintiffs' mortgage was destroyed by the bankruptcy proceedings, and that the title to the property in question had vested in the trustee in such bankruptcy proceedings. This motion was denied. But the court, upon its own motion, being of opinion that plaintiffs were entitled to recover, but that they had sustained only nominal damages, instructed the jury to return a verdict for plaintiffs for $1. Thereafter the court made an order for judgment on the verdict, and for costs and disbursements in favor of the plaintiffs. Later, upon motion of defendant, the judgment was modified by depriving plaintiffs of their costs, and awarding costs to defendant. Plaintiffs have appealed to this court, and, in a statement of case duly settled, specify for review a number of alleged errors.

The first and most important error assigned relates to the direction of the verdict. Appellants claim that "the court erred (1) in directing a verdict in this case for the plaintiffs for the sum of one dollar; and (2) in not directing a verdict for plaintiffs for the amount claimed in the complaint." We are of opinion that the trial court did not err in the particulars complained of to plaintiffs' prejudice. It is apparent that the foundation of plaintiffs' right to recover any sum whatever in this action is the chattel mortgage. If for any reason it appears that the instrument is invalid, their entire cause of action fails. The defendant's motion for a directed verdict assailed the mortgage as being fraudulent and void as to creditors of the mortgagors, and also upon the ground that the lien thereof had been stricken down by the bankruptcy proceedings. We shall have occasion to consider only the first ground of the motion, namely, the question as to whether the mortgage was fraudulent and void as to the creditors of the partnership. Counsel for appellants assert that the validity of the mortgage is sustained by the principles laid down by this court in *Bank* v. *Barnes*, 8 N. D. 432, 79 N. W. Rep. 880. We have reached an opposite conclusion. The views of this court as to the test to be applied to chattel mortgages of merchandise, like that now under consideration, were expressed in the following extract from the opinion formulated by Wallin, J., in the case referred to: "There is much conflict of judicial opinion as to the effect of permitting a debtor who has given a mortgage upon a stock of merchandise to remain

in possession and sell out the same. But we think it must be conceded that the better authorities do not hold that such an arrangement is necessarily fraudulent. Each case should be disposed of upon its own facts. We concede, however, that there is substantial agreement in the cases to the effect that such an arrangement may be assailed by creditors where it appears that the same was primarily intended as a means of hindering and delaying creditors, and at the same time of allowing the debtor to continue his business for his own advantage. In such cases the crucial test seems to be whether the arrangement is honestly entered into as a means of enabling the creditor to realize the largest amount possible out of the property mortgaged, or whether, on the contrary, the arrangement is made as a mere shift or device entered into chiefly for the debtor's advantage, and whereby he is enabled to carry on the business without interference from other creditors, and for his own advantage. We quote in this connection the language used by Mr. Justice Brewer in commenting upon certain decisions bearing upon this question, including *Robinson* v. *Elliott,* 22 Wall. 520, 22 L. Ed. 758. The distinguished jurist said: "In neither of those cases is it affirmed that a chattel mortgage on a stock of goods is necessarily invalidated by the fact that, either in the mortgage, or by parol agreement between the parties, the mortgagor is to retain possession, with the right to sell the goods at retail. On the contrary, it is clearly recognized in them that such an instrument is valid, notwithstanding these stipulations, if it appears that the sales were to be for the benefit of the mortgagee. What was meant was that such an instrument should not be used to enable the mortgagor to continue in business as theretofore, with full control of the property and business, appropriating to himself the benefits thereof, and all the while holding the instrument as a shield against the attacks of unsecured creditors.' We have quoted this language from the printed argument of counsel for the defendant, and we fully indorse the same as embodying a clear and satisfactory expression of the rule recognized by the better authorities as applicable to cases such as the case at bar." See cases cited in the opinion.

Turning now to the mortgage in question, we find that it conclusively appears from the provisions therein contained that its primary purpose an necessary effect was to hinder and delay the creditors of the mortgagors, and to serve as a shield and cover for the partnership property. Or, in other words, it operated not as security for the debt due the mortgagees, but as a protection to the mortgagors in the further prosecution of their business, and was thus primarily for the benefit of the mortgagors. By referring to its condition, it will be seen that no change whatever in the conduct of the business was contemplated. On the contrary, it was to continue just as it had been formerly conducted. The stock was to be kept up to the same actual value as when the mortgage was given, by additions thereto made from the proceeds of sales of the mort-

gaged goods. The reservation by the mortgagors of the power to sell the mortgaged goods, and to purchase new goods with the proceeds, when considered in connection with the provision that the stock was to be kept up to its original value, can be construed only as an express authorization by the mortgagees to the mortgagors to continue the business for an indefinite period. The selection of the additions to be made to the stock was not subject to the control of the mortgagees, but was controlled entirely by the mortgagors; and it was not contemplated that such additions were to be for the purpose of sorting up the mortgaged goods, thus facilitating their sale and aiding in paying the mortgage debt, but they were primarily for the purpose of aiding the mortgagors to keep such a stock of goods as would be profitable for them to have in the future conduct of their business. So, also, the provision for payment of the expenses of conducting the business out of the proceeds of sales of the mortgaged property, when considered in connection with certain other provisions of the mortgage, is equally fatal to its validity. Under the terms of the mortgage, the business was to continue just as it was before the mortgage was given. The only new obligation resting upon the mortgagors was their promises to pay on the mortgage debt the net profits of the business monthly; and this was in reality no more than an assurance, for the mortgagors, and not the mortgagees, controlled the proceeds of sales. In the meantime the mortgagors reserved the continuing right to pay all of the expenses of conducting the business, including rent, heat, light, taxes, insurance, freight on new goods, and $30 per month for each of the partners, out of the proceeds of sales of the mortgaged property. The right to withhold these expenses was limited only by the life of the mortgage. It will be observed by referring to the mortgage that it does not cover additions to the stock or after-acquired property. Consequently the new goods would not be subject to the mortgage lien. The necessary effect, then, of the provision authorizing the mortgagors to sell the mortgaged goods, and use the funds derived from such sales to purchase other goods, was to furnish a sure means to the partnership of acquiring an unincumbered stock of goods by aid of the property which was ostensibly hypothecated to secure the payment of the mortgage debt. Under such circumstances, it is apparent that the sales authorized to be made by the provision referred to were for the benefit of the mortgagors. Again, the fact that the mortgaging did not cover new goods rendered the provision for payment of expenses for conducting the business out of the proceeds of sales of the mortgaged goods fatal to the validity of the mortgage. As we have seen, should the business be conducted according to the terms of the mortgage, the items of stock would shift by sales and repurchases until no portion of the mortgaged goods would remain. Through the process of evolution provided for by the mortgage, the mortgaged stock might in time become an unincumb-

ered stock in the hands of the mortgagors, without the payment of a single dollar upon the mortgage debt. Not only does the mortgage afford authority to dispose of the mortgaged property without paying the proceeds upon the debt ostensibly secured, but it expressly authorizes the use of the proceeds of sales of the mortgaged goods to pay the entire expenses of running a business in which the mortgagees have but a partial interest. It might be conceded that on the day the mortgage was given the expenses provided for were legitimate charges, but as new goods were purchased, and the amount of unincumbered property increased, upon which the mortgagees had no lien, it is clear that the payment of all of the expenses of conducting this business was merely an application of the mortgaged property for the benefit of the mortgagors,—in other words, was the payment of all the expenses of a business in which the mrotgagees had but a partial and constantly diminishing interest. The mortgage involved in *Bank* v. *Barnes,* supra, was unlike the mortgage now under consideration, in all of its controlling features. The mortgage in that case covered after-acquired property. The mortgagor was left in possession as the agent of the mortgagee. The proceeds of sales were to be deposited daily. The new goods were purchased only in small quantities, and as a means of keeping an assortment, and to keep the stock in such condition as to make it profitable to handle, and with a view to the disposition of the entire stock of merchandise in the store. And the purchases in that case were determined by the mortgagee. In that case we reach the conclusion that the arrangement was an honest one, and calculated to afford at least as large a sum to apply upon the mortgage debt as could be realized from the goods at a forced sale. In the mortgage under consideration the restrictions found in the mortgage just referred to are entirely wanting. The necessary effect of this mortgage was to hinder and delay the creditors of the copartnership. No other conclusion is possible. We have not overlooked the fact that under § 5055, Rev. Codes 1899, the question of fraudulent intent is made a question of fact, and not of law. Here, however, the evidence of such intent is contained in a written instrument, and we cannot avoid the responsibility of declaring its legal effect. Our duty to do so is clear. On this subject we quote from Wait, Fraud. Conv. § 354: "Where the evidence is of such a conclusive nature that the fraudulent intent unmistakably fastens its fangs upon the transfer, so that a verdict or finding contrary to the evident evil design so established would be erroneous, the court pronounces the transaction covinous, and imputes the fraudunlent intent to the parties, in obedience to the principle of law that they must have contemplated the natural and necessary consequences of their acts. Where the facts are not controverted, and do not admit of a construction consistent with innocence, surely

N. D. R—34

the burden is cast upon the court to declare the result. There is no question of intention to be submitted to the jury. As the mortgage shows upon its face that it was not designed by the parties as an operative instrument between them, its only effect is to prejudice others. The court should 'pronounce it void, for the reason that the evidence conclusively shows it fraudulent.' *Russell* v. *Winne,* 37 N. Y. 595, 97 Am. Dec. 755. It is because such trusts are calculated to deceive and embarrass creditors, because they are not things to which honest debtors can have occasion to resort in sales of their property, and because they constitute the means which dishonest debtors commonly and ordinarily use to cheat their creditors, that the law does not permit a debtor to say that he used them for an honest purpose in any case. *Coolidge* v. *Melvin,* 42 N. H. 520; *Winkley* v. *Hill,* 9 N. H. 31. In *Blakeslee* v. *Rossman,* 43 Wis. 124, Chief Justice Ryan said: 'Intent does not enter into the question. Fraud in fact goes to avoid an instrument otherwise valid. But intent, bona fide or mala fide, is immaterial to an instrument per se fraudulent and void in law. The fraud which the law imputes to it is conclusive. Fraud in fact imputed to a contract (valid on its face) is a question of evidence.'" See, also, *Newell* v. *Wagness,* 1 N. D. 69, 44 N. W. Rep. 1014.

The mortgage in question is void as to creditors for another reason. When the mortgage was given the partnership was insolvent. The mortgage covered practically all, if not all, of the partnership property, and it undertook to secure the individual debts of the partners, which debts the partnership was under no legal or moral obligation to pay. In short, it was an attempted gift by an insolvent partnership of all of its property. This cannot be done. There is entire harmony in the authorities on this point. "A partnership paying the private debt of one of its members is paying what it is not liable for in law, equity, or morals, and is, in effect, giving away its property; and such conveyance, no bona fide rights intervening, is fraudulent and void as to existing creditors if they are prejudiced thereby, as well as to the separate creditor of the other partner, whose individual interest in the firm is thus given away." 1 Bates, Partn. § 566. See, also, *Ransom* v. *Van Deventer,* 41 Barb. 307; *Keith* v. *Fink,* 47 Ill. 272; *Heineman* v. *Hart,* 55 Mich. 64, 20 N. W. Rep. 792; *Cron* v. *Cron's Estate,* 56 Mich. 8, 22 N. W. Rep. 94; *Wilson* v. *Robertson,* 21 N. Y. 587; *Ferson* v. *Monroe,* 21 N. H. 562; *Patterson* v. *Seaton,* 70 Iowa 689, 28 N. W. Rep. 598; *Menagh* v. *Whitwell,* 52 N. Y. 147, 11 Am. Dec. 683; *Keith* v. *Armstrong,* 65 Wis. 225, 26 N. W. Rep. 445.

Having reached the conclusion that the mortgage was fraudulent and void as to creditors, it follows that plaintiffs had no cause of action. The court therefore properly refused to direct a verdict for plaintiffs for the full amount of their claim. Error was committed, however, in awarding to plaintiffs nominal damages, and the inclusion of the sum of $1 in the judgment appealed from was

erroneous. Otherwise the judgment, including the allowance of costs to defendant, meets our approval. The district court is directed to modify its judgment by eliminating the sum allowed to plaintiffs as nominal damages, and as so modified the judgment will be affirmed, with costs to respondent. The view we have taken as to the mortgage renders a consideration of other errors assigned unnecessary. All concur.